**Russell W. ROACH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–9512–CR–1324.

Supreme Court of Indiana.

June 19, 1998.

lates the Indiana and federal constitutions. As noted above, we have consistently rejected this contention.

Monica Foster, Hammerle Foster & Long–Sharp, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

Defendant Russell Roach was found guilty of murder after a jury trial. The trial court sentenced defendant to serve a fifty-five (55) year sentence and ordered him to pay a ten thousand dollar ($10,000) fine and to pay

twelve thousand six hundred and ninety-seven dollars and thirty-eight cents ($12,697.38) in restitution to the victim's family. Defendant now challenges his conviction and the restitution order. In this direct appeal, defendant raises five issues: 1) whether the trial court abused its discretion by refusing to permit an expert witness to testify; 2) whether insufficient evidence exists to sustain his conviction; 3) whether the trial court erred by permitting the admission of evidence that defendant had a prior conviction for burglary; 4) whether defendant is entitled to a new trial because of prosecutorial misconduct; and 5) whether the trial court erred in its restitution order. We answer each issue in the negative and affirm the trial court.

## FACTS

At approximately 3:48 a.m. on January 18, 1995, the 911 system received a call originating from defendant's home. Though the operator could hear voices in the background, no one responded to the operator's questions. Defendant did not remember making the call, but witnesses testified that it was his voice heard on the line. In response to the call, the operator sent two police officers to defendant's home.

The officers arrived at defendant's home at approximately 3:56 a.m. One of the officers, looking through a window, saw defendant dragging a body through the kitchen. He also saw defendant pick up a phone and try to place a call, even though another phone was lying on the floor off its hook. At this point, the officer knocked on defendant's front door. After several minutes, defendant finally opened the door. Defendant asked the officer to help his friend because the friend had shot himself. The officer noticed that defendant had scratches on his face and was reacting very slowly. After handcuffing defendant, the officer searched the home and found the dead body of Robert Grounds on the kitchen floor. The officer also found a .25 caliber pistol in the kitchen.

At approximately 4:05 a.m., a detective arrived at defendant's house. Defendant told her that he did not know Grounds, that Grounds shot himself, and that the shooting occurred outside of the house. The police took defendant to the police station where he waived his rights and gave a statement. Defendant stated that Grounds was an acquaintance of his and had come to his house around 2:00 a.m. that morning. Grounds was behaving strangely, and defendant and Grounds got into a fight. Grounds then pulled out a gun, they struggled over the gun, and the gun discharged and hit Grounds. Defendant told the police that he attempted to call 911 but then the police arrived. Defendant also stated that he did not remember telling the detective that Grounds had shot himself and that it had happened outside. Later that day, defendant went to a hospital to be examined. He told his hospital caretakers that he had been slammed against a wall and had been hit in the head with a gun. He said that the events were somewhat hazy and that he could not remember everything that had happened. His explanation of the events at the hospital was very similar to his statement to the police.

Defendant testified at trial. He testified that he was awakened around 3:30 a.m. on the morning of January 18, 1995 by Grounds banging on his door. After defendant let Grounds inside, Grounds demanded that defendant give him some money. When defendant refused, Grounds became hostile and hit defendant, eventually knocking him unconscious. When defendant regained consciousness, he found Grounds taking money from his wallet. Defendant tried to grab the money from Grounds, but it tore. As defendant tried to use the phone, Grounds pointed a gun at him. The two of them struggled over the gun, defendant was hit in the head with the gun, he fell against the wall and again hit his head, and the gun discharged. The cause of Grounds' death was a gunshot wound to the chest. The pathologist who testified at trial stated that Grounds' blood alcohol level at the time of death was .277, that Grounds had a fracture on his left hand which occurred at or near the time of death, and that two torn ten dollar bills were in Grounds' pocket.

## DISCUSSION

### I.

Defendant first argues that the trial court denied him a fair trial by excluding the testimony of an expert witness. At trial, defendant attempted to have an expert testify about his state of mind during and after the incident. Defendant wished to present this evidence to help explain the actions that he took and the inconsistent statements that he gave. In this appeal, defendant argues that the expert would have testified that defendant had suffered a concussion as a result of the altercation with Grounds and that this concussion would help to explain his irrational and inconsistent behavior. The trial court did not allow the expert to testify, and defendant asserts that this is reversible error.

■ Every defendant has the fundamental right to present witnesses in their own defense. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Kellems v. State*, 651 N.E.2d 326, 328 (Ind.Ct. App.1995). This right "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington*, 388 U.S. at 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019. At the same time, while the right to present witnesses is of the utmost importance, it is not absolute. *See Chambers*, 410 U.S. at 302, 93 S.Ct. 1038, 35 L.Ed.2d 297; *Kellems*, 651 N.E.2d at 328. "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038, 35 L.Ed.2d 297.

■ One of the evidence rules which a defendant must abide by concerns expert witness testimony. Ind.Evidence Rule 702. Evidence Rule 702 allows for expert witness testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Evid.R. 702. Whether or not the proffered witness meets these requirements and, thus, whether or not the witness should be allowed to testify, is a decision within the discretion of the trial court. *See Byrd v. State*, 593 N.E.2d 1183, 1185 (Ind.1992). On appeal, this Court only reviews such decisions for an abuse of discretion. *Id.*

■ If the trial court's decision was to exclude the expert testimony, then this Court may only review the decision if the defendant made a proper offer to prove. *See Bradford v. State*, 675 N.E.2d 296, 301–02 (Ind.1996), *reh'g denied; Yoon v. Yoon*, 687 N.E.2d 201, 205–06 (Ind.Ct.App.1997); Ind.Evidence Rule 103(a)(2). An offer to prove is "an 'offer' from counsel regarding what a witness would say if he was allowed to testify." *Bradford*, 675 N.E.2d at 301. The Rules of Evidence require that "the substance of the evidence" be made known to the trial court in the offer to prove. Evid.R. 103(a)(2). Also, the offer to prove should identify the grounds for admission of the testimony and the relevance of the testimony. *See Hilton v. State*, 648 N.E.2d 361, 362 (Ind.1995); *Yoon*, 687 N.E.2d at 206; *United States v. Peak*, 856 F.2d 825, 832 (7th Cir.1988); 13B R. MILLER, INDIANA PRACTICE, COURTROOM HANDBOOK ON INDIANA EVIDENCE 10 (1998); 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE § 103.20[1], [2] (2d ed. 1997).

Defendant asks that we review the trial court's decision to exclude the expert's testimony. Before addressing the merits of defendant's argument, we must answer two preliminary questions to determine whether defendant has preserved this issue for appeal. First, we must decide whether defendant made an offer to prove at trial. If we decide that defendant made an offer to prove, we must next determine whether the offer to prove made at trial covers the same grounds that defendant argues on appeal.

■ In answer to the first question, we conclude that defendant made a reviewable offer to prove. After the witness was sworn in but before the witness gave any statement, the trial court asked for "a brief statement from the lawyers as to what the evidence will be and why it's admissible and why it's not

admissible." (R. at 1245.) Defendant informed the court that the witness was a doctor who had testified in many trials and that defendant would seek to qualify the witness as an expert in psychiatry and the field of medicine. Defendant further informed the court that the witness had an opinion based upon an examination of the facts and circumstances and upon interviews with defendant. Defendant then stated that the witness would testify to the following: 1) concerning Grounds, the demeanor and behavior patterns of a person with a .277 blood alcohol level; 2) concerning defendant, how a person would react and behave if he was awakened by a belligerent and threatening person in his own home; 3) concerning defendant, how a person would react to having a dead person in his kitchen; and 4) concerning defendant, why a person who had been in this situation and then was handcuffed and taken to the police station might give inconsistent statements. Defendant then offered that the testimony would be admissible under Evidence Rules 703 and 704.

Had we been asked to review the trial court's decision to exclude the expert's testimony based upon this offer, we would probably find that, although a close call, the trial court did not abuse its discretion. The trial court was within its discretion to determine that defendant did not satisfy Evidence Rule 702 for admitting expert testimony. Considering that the substance of the offer to prove dealt with why a frightened individual might act and speak irrationally, the court may have felt that this evidence was within the jury's understanding and, thus, an expert witness would not assist the jury as is required by Rule 702.

■ However, defendant asks that we review the trial court's decision on the grounds that the expert should have been permitted to testify about the effects of a concussion on defendant. Defendant, on appeal, argues that the expert would have testified that defendant was suffering from a concussion during and after the shooting and that this would help to explain his behavior and inconsistent statements. We conclude that the

offer to prove at trial did not cover these grounds, and, therefore, we cannot address this issue on its merits. The trial court was not made aware via the offer to prove that the substance of the evidence included testimony concerning a concussion. The offer to prove informed the court that the witness would help to explain defendant's actions, but only in reference to the surprise and fright of the situation. Defendant gave no indication to the trial court, and none for this Court to review, that the witness would testify concerning a concussion, the effects of a concussion, or any other specific medical or psychiatric condition. As such, the issue is waived. We do not rule on whether the trial court abused it discretion on these grounds because these grounds were not before the trial court.

Defendant offers a secondary argument on this issue concerning his motion to correct errors. Defendant's motion asked for a new trial based upon the trial court's error in excluding the aforementioned witness's testimony. Attached to the motion was an affidavit of the witness and a memorandum of law in support of the motion. The affidavit primarily concerned the witness's belief that defendant had suffered a concussion and that the concussion would be very important to explain defendant's behavior and his inconsistent statements. Defendant argues that the "substance" of this evidence was made known to the trial court and asks that we consider this affidavit in determining whether the trial court erred.

■ As discussed above, we do not believe that the "substance" of this evidence was made known to the trial court through the offer to prove. At no point during the offer to prove did defendant mention a physical reason for his irrational and inconsistent behavior. The evidence presented in the affidavit concerning defendant's concussion is not an obvious or logical extension of the evidence presented in defendant's offer to prove. This evidence was not before the trial court, and we will not consider it in determining whether the trial court erred.[1]

---

1. Though not explicitly argued by defendant, we do not believe that the trial court abused its

discretion in denying defendant's motion to correct errors either. The grant or denial of a

## II.

Defendant next argues that insufficient evidence exists to sustain his conviction. Defendant was charged and convicted of knowingly killing another person. Defendant claims that the State did not present sufficient evidence from which a jury could reasonably infer that defendant knowingly killed Grounds. Specifically, defendant claims that the State has failed to prove beyond a reasonable doubt that the killing was murder rather than accidental or in self-defense.

■ When addressing a sufficiency of the evidence claim, this Court neither weighs the evidence nor judges the credibility of the witnesses. *Heavrin v. State,* 675 N.E.2d 1075, 1079 (Ind.1996), *reh'g denied.* We do consider all evidence favorable to the jury's verdict along with any reasonable inferences that can be drawn therefrom. *Id.* If we find that there is substantial evidence of probative value from which a jury could find guilt beyond a reasonable doubt, then we will affirm. *Id.*

■ Defendant was found guilty of knowingly killing Grounds. A person acts "knowingly" if "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2 (1993). "[K]nowledge may be proved by circumstantial evidence and inferred from the circumstances and facts of each case." *Heavrin,* 675 N.E.2d at 1079. A jury may infer intent from the "deliberate act of using a deadly weapon against another in a manner likely to cause death or serious injury." *Cate v. State,* 644 N.E.2d 546, 548 (Ind.1994).

■ A person may, however, legally use deadly force against another to prevent serious bodily injury to himself. Ind.Code § 35–41–3–2(a) (1993). Once a defendant creates a reasonable doubt as to his guilt by raising a self-defense claim, the State must prove, beyond a reasonable doubt, that the

defendant's use of force was unjustified. *Birdsong v. State,* 685 N.E.2d 42, 45 (Ind. 1997). "The determination of whether the State has met this burden is a question of 'fact" for the jury, and we review this factual conclusion as we do any sufficiency of the evidence challenge. *Id.*

■ We find that sufficient evidence exists to sustain defendant's conviction. First, the State introduced evidence to show that defendant used a gun to shoot Grounds in the chest. The evidence also shows that the gun was fired from a distance of three feet or more away from Grounds. Finally, the evidence shows that Grounds had a BAC of .277. While it is true that the jury could infer from this evidence that defendant accidentally shot Grounds or that defendant shot Grounds in self-defense, the jury could also reasonably infer that defendant knowingly killed Grounds. The jury could infer that defendant had control of the gun and the situation, but shot Grounds anyway.

## III.

Defendant next argues that the trial court erred by permitting the introduction of evidence showing that defendant had a prior conviction. During defendant's testimony, he stated that he had once been convicted of burglary. Defendant contends that it was error for the court to permit this testimony because the conviction occurred more than ten years before the trial and, therefore, was inadmissible under Ind.Evidence Rule 609(b). Defendant further contends that he was prejudiced because the prosecutor used this evidence to attack defendant's credibility.

■ Defendant cannot raise this issue on appeal as the testimony was given in response to a question by defendant's own counsel. A party cannot invite error and then use that error as grounds for reversal.

---

motion for a new trial is at the broad discretion of the trial court. *See Schuh v. Silcox,* 581 N.E.2d 926, 927 (Ind.Ct.App.1991). On appeal, this Court reviews the trial court's decision for an abuse of that discretion. *Id.* A party cannot use a motion to correct errors to present evidence which it merely neglected to submit during the trial. *See Radio Distributing Co., Inc. v.*

*National Bank and Trust Co.,* 489 N.E.2d 642, 645 (Ind.Ct.App.1986). The trial court was entirely within its discretion to determine that defendant, through his motion to correct errors, was attempting to present evidence for the trial court's consideration which he could have, but did not, present at trial.

*Kingery v. State,* 659 N.E.2d 490, 494 (Ind. 1995).

 Defendant argues that we should nonetheless address this issue because it was fundamental error for the trial court to allow this testimony. This Court may address the merits of an issue not properly preserved at trial if the error is fundamental. *Ben–Yisrayl v. State,* 690 N.E.2d 1141, 1150 (Ind. 1997). To show fundamental error, a defendant must show that the error was a substantial and blatant violation of basic principles which rendered the result of the trial unfair. *Id.* Given that there was just one brief reference to the prior conviction during trial and one brief reference during the State's closing argument, we do not believe that any error which may have occurred was fundamental.

### IV.

 Defendant further argues that he was denied a fair trial because of prosecutorial misconduct. Defendant presents four claims of prosecutorial misconduct. As the State notes and relies on in its brief, defendant did not object to any of these actions. As a result, this issue is waived. *Carter v. State,* 686 N.E.2d 1254, 1262 (Ind.1997). Defendant, however, seeks to avoid this waiver by alleging that the actions amounted to fundamental error. For prosecutorial misconduct to amount to fundamental error, the defendant must show that the conduct placed the defendant in grave peril and "had a probable persuasive effect on the jury's decision." *Id.*

 First, defendant argues that the prosecutor offered improper rebuttal evidence and that such misconduct had an impermissible persuasive effect on the jury. For example, after defendant provided evidence of Grounds' violent and intoxicated tendencies to support defendant's self-defense claim, the prosecutor offered testimony that Grounds was a drug informant for the police and that he was hardworking and truthful. Also, the prosecutor impeached one of defendant's witnesses by having a police officer testify that "in the course of ... working with drug dealing transactions [he was] familiar with" the name of the relevant witness. (R. at 1326.) Defendant argues that the challenged evidence was inadmissible under the Rules of Evidence and that the improperly introduced evidence prejudiced defendant by providing the jury with a possible drug related motive for the killing. Assuming without deciding that the prosecutor committed error by offering the now challenged rebuttal evidence, we do not believe that defendant was placed in grave peril. The challenged evidence was brief and non-inflammatory. The only subsequent reference to the testimony was during closing argument when the prosecutor reminded the jury that several witnesses had testified that they knew Grounds to be hard-working and peaceful. There was no insinuation of a drug related killing, and the jury was aware that others knew Grounds to be violent when intoxicated.

 Second, defendant argues that the prosecutor committed misconduct during closing argument by inviting the jury to examine the gun during the jury's deliberation. The prosecutor told the jury that it could try operating and unloading the gun to see that the firing of the gun would take an intentional act and could not happen accidentally. Defendant argues that this amounted to prejudicial error because it invited the jury to consider evidence outside of the presence of defendant. Assuming without deciding that this argument was error, we nonetheless hold that it did not place defendant in grave peril. Unlike the case which defendant cites to, *People v. Andrew,* 156 A.D.2d 978, 549 N.Y.S.2d 268 (N.Y.App.Div.1989), there is no indication that the jury actually test-fired the gun outside of defendant's presence. Instead, the prosecutor was arguing the facts: that the trigger was hard to pull and that, therefore, an accidental shooting was less likely than an intentional shooting.

 Third, defendant argues that the prosecutor committed misconduct during closing argument by stating that defendant was receiving his day in court while Grounds, the victim, could not. We do not believe that the prosecutor committed any misconduct in this regard. The inference which the prosecutor was making was that, while defendant

was able to tell his version of the facts, the jury would have to rely on experts and other witnesses in order to understand what Grounds' version of the facts might be. Even if the prosecutor did commit misconduct with these statements, defendant was not placed in grave peril because the comments were not stated in a manner that would incite the jury against defendant.

■■■■ Finally, defendant argues that the prosecutor committed misconduct during closing arguments by referring to the lack of evidence concerning defendant's injuries when the prosecutor had been instrumental at excluding any such information during the trial. During closing argument, the prosecutor argued that, even though defendant talked at length about the injuries he received during the struggle, the evidence showed that any injuries were not nearly as bad as defendant described them. We do not believe that the prosecutor committed misconduct. The prosecutor has the right to argue the evidence during closing argument. *See Miller v. State*, 623 N.E.2d 403, 407–08 (Ind.1993).

## V.

Defendant's last argument is that the trial court erred in its restitution order. In addition to sentencing defendant to 55 years and fining him $10,000, the trial court ordered defendant to pay restitution to the victim's parents in the amount of $12,697.38. Defendant contends that the trial court's order exceeded the bounds of Ind.Code § 35–50–5–3. Specifically, defendant contests the award of restitution for the funeral and burial expenses, the expenses and lost wages for attending the trial, and the expense for a tombstone.

■■■■ Under Ind.Code § 35–50–5–3, a court may order, in addition to any sentence, that the defendant make restitution to the victim of the crime. Ind.Code § 35–50–5–3

(1993). Though "victim" is undefined, this Court has held that the survivors of a murder victim who have shown "loss as a direct and immediate result of the criminal acts of a defendant" may be considered victims under this act. *Reinbold v. State*, 555 N.E.2d 463, 470 (Ind.1990), *overruled in part on other grounds by, Wright v. State*, 658 N.E.2d 563 (Ind.1995). According to the statute, "a court shall base the restitution order upon a consideration of:" (1) the property damages incurred as a result of the crime, based on the actual cost of repair, (2) the medical and hospital costs incurred as a result of the crime and prior to sentencing, and (3) any lost earnings incurred as a result of the crime and prior to sentencing. *Id.* This Court has also found that a trial court is within its discretion to order restitution for funeral and burial expenses if those expenses resulted from the defendant's acts. *Reinbold*, 555 N.E.2d at 470–71.[2] As alluded to above, the order of restitution is within the trial court's discretion and we will only review the order for an abuse of that discretion. *See Vanness v. State*, 605 N.E.2d 777, 783 (Ind.Ct.App.1992).

■■■■ The trial court did not abuse its discretion in this case. It is true, as defendant asserts, that many of the expenses were rounded off to even dollar amounts and that one of the expenses was for an estimate on a burial monument that has not yet been bought. However, all of the tendered expenses were incurred as a "direct and immediate result" of defendant's actions. The expenses incurred by the parents of the victim are well documented and existed prior to sentencing. There is no evidence that the listed expenses are wrong, only that they are rounded off. While expenses that are rounded to the nearest dollar may not literally be the "actual expense," we certainly will not find an abuse of discretion when a trial court orders such restitution. Also, though the burial monument has not yet been pur-

---

2. After the crime was committed in this case, an amended version of Ind.Code § 35–50–5–3 came into effect. P.L. 307–1995 (effective date July 1, 1995). The amendment codified this fourth consideration by stating that a court "shall base its restitution order upon a consideration of: ... (4) funeral, burial, or cremation costs incurred by the family or estate of a homicide victim as a result of the crime." P.L. 307–1995. The amendment also codified that, under the statute, "victim" may include "the victim's estate, or the family of the victim who is deceased." P.L. 307–1995.

chased, this is not some nebulous future expense that may or may not actually be incurred. The monument is a part of the funeral and burial expenses, and, as such, its cost properly falls under the restitution statute.

## CONCLUSION

We affirm the conviction and restitution order.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.