Steven E. **MARKLAND**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 79A04–0612–CR–728.

Court of Appeals of Indiana.

April 30, 2007.

---

Elizabeth B. Searle, Steven P. Meyer, Ball Eggleston PC, Lafayette, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Steven E. Markland appeals his conviction for Theft,[1] claiming insufficiency of the evidence. Markland also argues that the trial court erred in ordering him to make restitution for costs relating to the disinterment and cremation of a body. Finding no error, we affirm the judgment of the trial court.

### FACTS

On January 31, 2005, Markland's best friend, William Dycus, was murdered. The following day, Markland telephoned the Lafayette Police Department and erroneously identified himself as Dycus's nephew. Also on that day, Markland told an acquaintance, James Bee, that Dycus was his uncle and asked Bee to accompany him to the apartment.

When the two arrived at Dycus's residence, Bee saw Markland use a key to gain entry. Markland then "grabbed stuff, some swords, CD's, [and] tapes" from the apartment. Tr. p. 29, 30. After leaving, the pair went to Markland's home in Tippecanoe County and took the items inside. Markland gave Bee a pack of cigarettes from Dycus's apartment for helping him. Bee subsequently learned that Markland was not Dycus's nephew.

At some point before Dycus's death, Markland worked as a general laborer in the apartment complex where Dycus resided. While Markland had possession of a master key during his employment, he returned his key and a cell phone when he quit in November 2005.

Following Dycus's death, Markland went to the county trustees' office on February 4, 2005, and applied for assistance regarding Dycus's funeral arrangements and burial. Once again, Markland asserted that he was Dycus's nephew. In response, representatives from the trustees' office planned a visit to Dycus's apartment to determine if there was anything of value that could be used to reimburse them for the costs of the funeral and burial.

On February 8, 2005, several individuals from the trustees' office met Markland and his girlfriend at the apartment. When they went inside, Markland pointed out that various items were missing including pictures, swords, and tools. During that visit, Markland took a pair of boots, jeans, and a shirt from the residence.

Markland and his girlfriend made another trip to Dycus's apartment a week or two later. They entered the apartment with a key, and Markland removed additional items and took them to his own residence. Markland indicated to his girlfriend that he was going to divide that property between himself and Dycus's girlfriend.

During the course of the investigation, Markland gave a statement to the police, admitting that he had taken some of Dycus's property including swords and

1. Ind.Code § 35-43-4-2.

knives. Markland again misrepresented to the police that he was Dycus's nephew and stated that he removed the items from the residence to prevent the landlord or others from taking the property. Thereafter, Markland was charged with theft and false informing. Markland pleaded guilty to false informing and proceeded to a jury trial on the theft charge. Markland was found guilty as charged and was later sentenced to eighteen months for theft and 180 days on the false informing charge, with the sentences to run concurrently.

At a sentencing hearing that commenced on August 30, 2006, one of Dycus's relatives testified that the family would like to have the body exhumed and cremated. Because Dycus had been estranged from family members, they had not been informed of Dycus's murder or burial until February 18, 2005. Dycus's family provided the trial court with an estimate of $4,097.50 as the cost of these procedures. As a result, the trial court ordered Markland to make restitution for the expenses relating to the disinterment and cremation of Dycus's body. Markland now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Markland first claims that the evidence was insufficient to support his conviction for theft. Specifically, Markland maintains that his conviction must be reversed because the State failed to prove the ownership of the property that was taken and that no evidence was presented establishing his "intent to deprive." Appellant's Br. p. 10.

When reviewing challenges to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind.2001). Rather, we will examine the evidence and the reasonable inferences that may be drawn therefrom that support the verdict and will affirm a conviction if there is probative evidence based on which a jury could find the defendant guilty beyond a reasonable doubt. *Id.* Put another way, we will affirm unless "no rational fact-finder" could have found the defendant guilty beyond a reasonable doubt. *Clark v. State*, 728 N.E.2d 880, 887 (Ind.Ct.App.2000). To convict Markland of theft, the State was required to prove that he knowingly or intentionally exerted unauthorized control over Dycus's property with the "intent to deprive the other person of any part of its value or use." I.C. § 35–43–4–2.

Markland claims that his conviction must be reversed because the State did not prove that Dycus's heirs owned the property that was removed from the apartment. While he correctly contends that the name of the owner or possessor of property alleged to have been stolen is a material allegation that must be proven beyond a reasonable doubt, *see Thomas v. State*, 423 N.E.2d 682, 685 (Ind.Ct.App. 1981), our Supreme Court has determined that a theft conviction may rely on circumstantial evidence alone if that evidence supports a reasonable inference of guilt. *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000).

We note that Indiana Code section 29–1–7–23 provides that a decedent's property passes to those individuals devised in a will and through intestate succession if there is no will. Additionally, our intestate succession statute provides that the estate of a deceased individual is generally distributed to the surviving parents, brothers, and sisters if the individual does not have a surviving spouse or children. I.C. § 29–1–2–1(d)(3). Also, the term "heir" is defined by Indiana Code section 29–1–1–3 as a person entitled to property under the intestacy statutes.

In this case, the evidence showed that Dycus was survived by his mother, sister, and half-sister. Tr. p. 105–06. Through a stipulation signed by the parties prior to trial, it was established that Markland "DID NOT have permission" from any of "William Dycus's heirs or any other relatives" to possess or have control over Dycus's property. Appellant's App. p. 89. In essence, it is apparent that Markland attempted to use the stipulation as a shield at trial to preclude testimony from Dycus's family and now as a sword on appeal to assert that the State failed to prove the offense. However, when Markland stipulated that Dycus's heirs did not give him permission to possess the property, it is apparent to us that the stipulation necessarily acknowledged that Dycus died without a will and that heirs existed under the intestacy statute. While it is conceivable that a will may have existed, we need not determine whether the evidence is sufficient to defeat every reasonable hypothesis. *Thomas*, 423 N.E.2d at 685. Therefore, under these circumstances, it can be reasonably inferred from the nature of Dycus's death, the stipulation executed by the parties, and the survival of Dycus's mother, sister, and half-sister, that those relatives were Dycus's heirs and the owners of his property at the time of death. Thus, Markland's claim fails.

■ We similarly reject Markland's argument that the State failed to establish that he had the intent to deprive the heirs of the value of the property. Indiana Code section 35–41–2–2(b) provides that a person engages in conduct "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so." On the other hand, an individual engages in conduct intentionally if, "when he engaged in the conduct, it is his conscious objective to do so." I.C. § 35–41–2–2(a). Intent is a mental state and, absent a defendant's confession, it must be determined from a consideration of the defendant's conduct and the natural and usual consequences of that conduct. *West v. State*, 805 N.E.2d 909, 915 (Ind.Ct.App. 2004). Therefore, the trier of fact is permitted to infer intent from the surrounding circumstances. *E.H. v. State*, 764 N.E.2d 681, 683 (Ind.Ct.App.2002).

In this case, the evidence showed that shortly after Dycus's death, Markland lied and told Bee that he was Dycus's nephew and asked him to accompany him to Dycus's apartment. Tr. p. 21, 24. Markland took various items, and it was subsequently established that Markland was not related to Dycus in any way. *Id.* at 31, 61. In view of Markland's lies about his purported familial relationship with Dycus, there was sufficient evidence to show that he knew the property did not belong to him. Although the State must establish ownership of the property to establish the offense of theft, Markland directs us to no authority—and we have found none—that requires the State to prove that the defendant knew the property owner's identity. Indeed, Markland's knowledge of the property owner's identity is simply not relevant in order to prove his intent. Thus, because Markland's conduct and the timing of his actions demonstrate that he had the requisite intent to commit the offense, we conclude that the evidence was sufficient to support the conviction.

## II. Restitution

■ Markland next claims that the trial court erred in ordering him to pay Dycus's family for the costs of the disinterment and cremation of Dycus's body. In essence, Markland contends that the payment of such costs is not permitted under our restitution statute.

■ In addressing this issue, we first note that a defendant who fails to object to the trial court's imposition of restitution at

the first opportunity waives his right on appeal. *Ware v. State*, 816 N.E.2d 1167, 1179 (Ind.Ct.App.2004). Here, Markland failed to object when the trial court ordered him to pay for "the expenses of disinterring the body of [Dycus], having him cremated, and the ashes provided to the family." Appellant's App. p. 3.[2] Thus, Markland has waived the issue.

Waiver notwithstanding, this court has observed that an order of restitution is within the trial court's discretion, and it will be reversed only upon a finding of an abuse of that discretion. *Myers v. State*, 848 N.E.2d 1108, 1109 (Ind.Ct.App.2006). An abuse of discretion occurs when the trial court misinterprets or misapplies the law. *Green v. State*, 811 N.E.2d 874, 877 (Ind.Ct.App.2004).

Pursuant to Indiana Code section 35–50–5–3, a trial court may order an individual who is sentenced for a felony or misdemeanor to make restitution to the victim of the crime. The trial court shall consider the "property damages of the victim incurred as a result of the crime, based on the actual cost of repair (or replacement if repair is inappropriate)[.]" I.C. § 35–50–5–3(a)(1). For victims of homicide, the restitution order should be based upon a consideration of "funeral, burial, or cremation costs incurred by the family or estate of a homicide victim[.]" I.C. § 35–50–5–3(5). The amount of actual loss is a factual matter that can be determined only upon the presentation of evidence. *Kellett v. State*, 716 N.E.2d 975, 980 (Ind.Ct.App. 1999). Additionally, while it is generally true that only actual expenses incurred by the victim before the date of sentencing may be included in restitution, our Supreme Court has recognized a limited exception to this rule when it comes to funeral related expenses. *Roach v. State*, 695 N.E.2d 934, 943 (Ind.1998) (holding that

even though a burial monument had not yet been purchased, it was not some nebulous future expense that may or may not actually be incurred).

In this case, Markland's criminal act of posing as Dycus's next of kin resulted in damage to Dycus's family by preventing them from burying Dycus in a way that they deemed appropriate. As discussed above, Markland went to the county trustees' office to apply for burial assistance and misidentified himself as Dycus's nephew. Tr. p. 39–40. By lying to government officials about his relationship to Dycus and taking matters into his own hands, Markland's acts were the cause of the subsequent funeral expenses. *Cf. Roach.* Thus, in accordance with Indiana Code section 35–50–5–3(1), we conclude that the trial court properly ordered Markland to pay the disinterment and burial costs in the form of restitution even though these expenses had not actually been incurred before he was sentenced. *See id.* at 944.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and CRONE, J., concur.

---

2. While the trial transcript is paginated, the sentencing hearing is not.