## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 12 2015, 10:00 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Ellen M O'Conner
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Rodgers,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 12, 2015

Court of Appeals Case No.
49A02-1406-CR-407

Appeal from the Marion Superior Court
The Honorable Carol J. Orbison, Judge
Case No. 46G05-1302-FA-10687

**Bradford, Judge.**

# Case Summary

[1] At some point in early 2012, Appellant-Defendant Ronald Rodgers impregnated D.B., the daughter of a girlfriend. In December of that year, D.B.

gave birth to a child that was determined to have been fathered by Rodgers. In February of 2014, Appellee-Plaintiff the State of Indiana ("the State") charged Rodgers with three counts of Class A felony child molesting and one count of Class C felony child molesting. On April 30, 2014, Rodgers moved for a continuance to investigate the role an alleged medical condition of Rodgers's might have played in his offenses.

[2] On May 2, 2014, Rodgers argued at a hearing for a continuance on the grounds that he wished additional time to investigate potential witnesses and to investigate an unspecified medical condition that might have played a role in his offenses. On May 9, 2014, the day Rodgers's bench trial began, he renewed his motion for a continuance in order to secure Department of Correction ("DOC") records related to his alleged insomnia and sleep apnea and his alleged use of Ambien and to potentially secure an expert to testify regarding the risk of Ambien causing, essentially, sleepwalking. The trial court denied Rodgers's request for a continuance.

[3] Following trial, the trial court found Rodgers guilty of one count of Class A felony child molesting and sentenced him to fifty years of incarceration with ten years suspended. Rodgers contends that the trial court abused its discretion in denying his request for a continuance. We affirm.

## Facts and Procedural History

[4] D.B. was born on February 16, 2000. D.B. is educationally and cognitively delayed, her ability to communicate is challenged, and, in early 2012, she did not yet understand the connection between sexual intercourse and human reproduction. In early 2012, Rodgers, who was then in a relationship with D.B.'s mother and was acting as D.B.'s stepfather, had sexual intercourse with D.B. One day when D.B.'s mother was not at home, Rodgers removed D.B.'s pajamas and touched her "private parts" with his "private part" on the "[i]nside" until clear liquid came out. Tr. pp. 54, 55. D.B. eventually discovered that she was pregnant with what would later be determined to be Rodgers's child and gave birth on December 28, 2012.

[5] On February 20, 2013, the State charged Rodgers with three counts of Class A felony child molesting and one count of Class C felony child molesting. On February 28, 2013, attorney Dominic Martin entered his appearance on behalf of Rodgers. By April of 2013, Rodgers began to express dissatisfaction with Martin's representation. In January and March of 2014, Rodgers petitioned the trial court to dismiss Martin. On March 4, 2014, Rodgers requested a speedy trial, meaning that the latest date his trial could begin was May 13, 2014. On April 3, 2014, the trial court granted Rodgers's motion to proceed pro se, granted his request to waive jury trial, and set a trial date of May 9, 2014.

[6] On April 14, 2014, Rodgers requested the trial court to appoint him new trial counsel. The trial court reappointed Martin, who reentered his appearance on April 21, 2014. On April 28, 2014, Rodgers sent a letter to the trial court expressing dissatisfaction with Martin and requesting withdrawal of his jury

trial waiver. On April 30, 2014, Rodgers (through Martin) filed a motion for continuance on the grounds that there were witnesses that had not yet been subpoenaed and that Rodgers's "medical condition may have played a role in the offense which must be explored prior to trial." Appellant's App. p. 108.

[7] On May 2, 2014, Martin revealed at a hearing that Rodgers had told him of his possible medical defense only earlier that week, which the trial court observed was approximately 420 days after the case had originally been filed. Martin also indicated that D.B.'s mother and grandmother were the witnesses that needed to be subpoenaed and that Rodgers had told him that Rodgers's Department of Correction ("DOC") medical records indicated that he suffered from sleep apnea. The trial court denied Rodgers's motion for a continuance but left open the possibility, provided that Martin could learn something before the start of trial to support the new defense theory.

[8] On May 9, 2014, at the beginning of Rodgers's bench trial, Rodgers renewed his request for a continuance, with Martin stating that he had learned from Rodgers that he had suffered from sleep apnea which had led to insomnia and that he had taken Ambien while incarcerated in the DOC. Rodgers argued that a possible involuntary intoxication defense existed and that he needed a continuance in order to obtain DOC medical records and possibly the services of an expert. The trial court denied Rodgers's motion for continuance.

[9] During trial, Rodgers testified that he suffered from sleep apnea that developed into insomnia and that he was using Ambien during the time that he

impregnated D.B. Rodgers denied any recollection of having sexual intercourse with D.B. The trial court found Rodgers guilty of one count of Class A felony child molesting. On May 16, 2014, the trial court sentenced Rodgers to fifty years of incarceration, with ten years suspended.

# Discussion and Decision

## Whether the Trial Court Abused its Discretion in Denying Rodgers's Motion for a Continuance

[10] Rodgers agrees with the State that his motion for a continuance was nonstatutory, and the following standard of review therefore applies:

> Rulings on nonstatutory motions for continuance lie within the discretion of the trial court and will be reversed only for an abuse of that discretion and resultant prejudice. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000). An abuse of discretion occurs only where the decision is clearly against the logic and effect of the facts and circumstances. *Palmer v. State*, 704 N.E.2d 124, 127 (Ind. 1999). We will not conclude that the trial court abused its discretion unless the defendant can demonstrate prejudice as a result of the trial court's denial of the motion for continuance. *Dorton v. State*, 419 N.E.2d 1289, 1295 (Ind. 1981). Continuances to allow more time for preparation are not favored and are granted only by showing good cause and in the furtherance of justice. *Timm v. State*, 644 N.E.2d 1235, 1237 (Ind. 1994).

[11] *Stafford v. State*, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008). "In determining whether good cause exists, the trial judge may look to the circumstances of the case as well as the allegations of the motion and is not required to grant the

motion simply because it complied with [the rules of trial procedure]." *Bryan v. State*, 438 N.E. 2d 709, 714 (Ind. 1982). "Although the right to present a defense 'is of the utmost importance, it is not absolute.'" *Marley v. State*, 747 N.E.2d 1123, 1132 (Ind. 2001) (citing *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998)). "'[T]he accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id*. (citing *Roach*, 695 N.E.2d at 939).

[12] Under the circumstances of this case, we cannot say that the trial court abused its discretion in denying Rodgers's motion for continuance. Approximately 420 days after charges were filed but only a few days before trial, Rodgers first informed Martin of his alleged insomnia and Ambien use. Rodgers's possible defense was brought to the trial court's attention nine days before trial. Rodgers does not claim that he was unaware of his possible defense before disclosing it to Martin, only that his "rocky relationship" with Martin somehow caused him to withhold the information. Appellant's Br. p. 6. Rodgers does not explain, and we do not see, how a contentious relationship with one's trial counsel would cause one to fail to disclose a possibly exonerating defense. If nothing else, Rodgers could have informed the trial court directly of the possible defense, which would have at least brought it to light in a more timely fashion. The record on appeal contains no fewer than eight personal correspondences from Rodgers to the trial court and three motions to dismiss Martin, none of which mention his possible involuntary intoxication defense. Indeed, because

most of Rodgers's correspondence details his concerns that Martin was not diligent in preparing an adequate defense for him, the fact that Rodgers never mentioned his involuntary intoxication defense calls its validity into serious question. Under the circumstances, especially the length of time Rodgers waited before telling anyone about his possible voluntary intoxication defense, we cannot say that the trial court abused its discretion in denying Rodgers's motion for continuance.

[13] The facts in this case are similar to those in *Miller v. State*, 372 N.E.2d 1168 (Ind. 1978):

> Appellant Miller first suggested to his attorney four days before trial that he had an alibi. However, this was more than ten months after his initial arrest and approximately six weeks after Miller's attorney entered an appearance on Miller's behalf. The validity of Miller's alibi is therefore questionable. Furthermore, appellant's attorney had approximately six weeks to prepare the case for trial and investigate any possible defenses. This is a sufficient period of time for adequate preparation in order to provide appellant with effective counsel. Therefore, appellant has not established a clear abuse of discretion by the trial judge and there was no error in denying the motion.

[14] *Id*. at 1171. In *Miller*, as here, the reason for failure to disclose the possible defense earlier was never explained, and the disclosure that *did* occur came very late in the game. Because we find *Miller* to be sufficiently analogous as to control in this case, we reach the same result.

[15] The judgment of the trial court is affirmed.

Najam, J, and Mathias, J., concur.