FILED

Mar 02 2018, 10:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Zechariah James, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 2, 2018 <br><br> Court of Appeals Case No. <br> 49A05-1708-CR-1792 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt Eisgruber, Judge <br><br> Trial Court Cause No. <br> 49G01-1604-MR-14197 |

**Bradford, Judge.**

# Case Summary

[1] In June of 2017, Appellant-Defendant Zechariah James was convicted of the murder of Antoan Johnson. In challenging his conviction on appeal, James argues that the trial court abused its discretion and violated his constitutional right to present a defense by excluding certain proffered evidence from trial. The evidence in question is related to an alleged prior threat made by the victim to James approximately two years prior to the murder. Because the trial court did not abuse its discretion in excluding the proffered evidence as too remote, we affirm.

# Facts and Procedural History

[2] At some point, James and Danitra Johnson were involved in a romantic relationship and had a daughter together. Danitra subsequently married Antoan. At times, the seemingly inconsistent nature of James's relationship with his daughter caused conflict between the parties. However, the parties' relationship had improved prior to the date in question. Also prior to the date in question, Danitra had assisted James in purchasing a vehicle, with Danitra's name being listed on the bill of sale.

[3] At around 11:00 p.m. on April 10, 2016, James dropped his daughter off at Danitra's home in Indianapolis. James then went to meet some friends at a nightclub called "The Point." Tr. Vol. III, p. 107. While at the nightclub, James's vehicle was towed.

[4] James went to the tow yard to retrieve his vehicle. Upon arriving, the staff at the tow yard allowed James to approach the vehicle to retrieve the bill of sale in order to prove he owned the vehicle. While retrieving the bill of sale, James also retrieved his gun. James subsequently learned that because Danitra's name was listed on the bill of sale, she was the only individual to whom the tow yard could release the vehicle.

[5] At approximately 3:45 a.m. on April 11, 2016, James called Danitra to ask her to come to the tow yard and help him retrieve his vehicle. James called and texted Danitra several times. Danitra did not answer the phone calls or respond to the texts because it was late and she did not want her husband to become concerned about James calling her so late at night. James then called Antoan. Danitra answered but hung up without speaking to James. Eventually, Antoan returned James's call. James told Antoan that he "wasn't trying to cause trouble" and that he needed Danitra's help to retrieve his vehicle. Tr. Vol. II, p. 56. James became angry when Antoan told him that he would have to pay for his and Danitra's assistance. James then told Antoan that he "was going to pull up on him." Tr. Vol. II, p. 57. Danitra understood James "to be angry" and that he was going to come to her home. Tr. Vol. II, p. 57. Danitra was scared and neither she nor Antoan wanted to go to the tow yard with James.

[6] Danitra and Antoan attempted to evade James by leaving their home. However, as they were leaving, James arrived at their home. James told Danitra "You know I don't play about my money. I want my car out." Tr. Vol. II, p. 61. Danitra was scared because she recognized that James was

"really, really angry." Tr. Vol. II, p. 62. Danitra and Antoan agreed to help James but indicated that they needed to make a stop before going to the tow yard. While on the way to this alleged stop, Danitra and Antoan again attempted to evade James by making a "U-turn" before coming to a stop. Tr. Vol. II, p. 64.

[7] Initially, Danitra and Antoan believed that the vehicle in which James was a passenger continued towards the tow yard. However, soon after they stopped, James approached their vehicle "[r]eally fast" with a gun his hand. Tr. Vol. II, p. 66. After seeing James's gun, Danitra placed a gun that she had brought with her between the center console and Antoan's seat. James pointed his gun at Antoan and instructed him to "[u]nlock the door." Tr. Vol. II, p. 68. Antoan, who was sitting in the driver's seat, unlocked the doors to the vehicle. James then "jumped in the back seat right behind" Antoan. Tr. Vol. II, p. 68. Once inside the vehicle, James continued to wave his gun and yell at Danitra and Antoan. Although Antoan was aware of the gun that Danitra had placed beside him, he "never lifted it up" or pointed it at James. Tr. Vol. II, p. 69.

[8] At some point, Antoan asked James "What's all the loud talk about?" and started to get out of the vehicle. Tr. Vol. II, p. 71. Before he could do so, however, James shot him multiple times in the back. Afraid that James might also shoot her, Danitra quickly exited the vehicle and ran to safety before calling 911.

[9] On April 15, 2016, Appellee-Plaintiff the State of Indiana ("the State") charged James with murder and Level 4 felony unlawful possession of a firearm by a serious violent felon. On June 24, 2017, James filed a motion to bifurcate the unlawful possession charge from the murder charge. The trial court granted this motion prior to the start of James's two-day trial on June 26, 2017.

[10] At trial, James admitted that he shot Antoan multiple times in the back, but claimed that he did so in self-defense. In support of his claim of self-defense, James sought to introduce evidence indicating that at some point in 2014, Antoan threatened to kill him after he dropped his daughter off at Danitra's home. The State objected to the admission of evidence relating to the alleged threated, arguing that evidence was not relevant and should be excluded. In making this argument, the State claimed that because approximately two years had passed and the parties' relationship had significantly improved since the alleged threat had been made, one could not reasonably infer that the alleged threat continued to make James to fear for his safety. The trial court agreed with the State's position and, after allowing defense counsel the opportunity to make an offer to prove, excluded evidence relating to the prior alleged threat.

[11] The trial continued and the trial court allowed James to introduce other evidence in support of his claim of self-defense, including James's claim that Antoan threatened to shoot him moments before James shot Antoan. At the conclusion of trial, the jury found James guilty of Antoan's murder. The remaining unlawful possession of a firearm charge was subsequently dismissed and the trial court sentenced James to a sixty-year term of incarceration.

# Discussion and Decision

[12] James argues that the trial court violated his constitutional right to present a defense by excluding certain proffered evidence from trial.

> The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002). We will only reverse a trial court's decision on the admissibility of evidence upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005). We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006).

*Scott v. State*, 883 N.E.2d 147, 152 (Ind. Ct. App. 2008).

[13] While a defendant has a constitutional right to present a defense, this right is not absolute. *See Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998). "'In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id*. (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). One such rule requires that the evidence presented by the parties be relevant. *See Sanchez v. State*, 749 N.E.2d 509, 521 (Ind. 2001). Thus, as the State correctly points out, James had a

constitutional right to present relevant evidence in support his defense, but had no such right to present evidence that was found not to be relevant.

## James's Self-Defense Claim

[14] James admitted during trial that he shot Antoan multiple times in the back, but claims that he did so in self-defense. "A valid claim of self-defense is a legal justification for an otherwise criminal act." *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003) (citing *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000)). "A person is justified in using reasonable force against another person to protect himself … from what he reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). Further, a person is justified in using deadly force "if the person reasonably believes that the force is necessary to prevent serious bodily injury to the person[.]" *Id.* "A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm." *Henson*, 786 N.E.2d at 277 (citing *White v. State*, 699 N.E.2d 630, 635 (Ind. 1998)).

[15] Generally, "[w]hen a claim of self-defense is interposed, '[a]ny fact which reasonably would place a person in fear or apprehension of death or great bodily injury is admissible.'" *Hirsch v. State*, 697 N.E.2d 37, 40 (Ind. 1998) (quoting *Russell v. State*, 577 N.E.2d 567, 568 (Ind. 1991)) (first set of brackets added, second set in original). However, evidence must pass the "liberal relevancy standard of Evidence Rule 401." *See id.* at 41. Under Evidence Rule

401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable that it would be without the evidence; and (b) the fact is of consequence in determining the action."

[16] At trial, James sought to introduce evidence that at some point in 2014, Antoan threatened him after he dropped his daughter off at Danitra's home. Specifically, James claimed that Antoan told him "Hey, if you come over here again, I got something for you. I'm going to shoot your a[**] and I'm going to shoot your baby mama and I'll beat your kid [sic] a[**]." Tr. Vol. III, p. 104. The State argued that evidence relating to the alleged threat was not relevant and should be excluded because "given the two year gap, its tenuous to link to the date of the murder, and the fact that they were around each other after that purported threat was made within those two years … that they got along towards the end around the time that the murder happened, so the fact that they were talking and they were getting along, it's just too -- it's too remote in time[.]" Tr. Vol. II, p. 16. The trial court agreed with the State's position and excluded evidence relating to the prior alleged threat.

[17] Our review of the record convinces us that trial court's decision was not clearly against the logic and effect of the facts or the circumstances before the trial court. The record indicates that Antoan's previous threat was allegedly made during a contentious time for the parties and that the parties had since resolved their issues. Moreover, in the time since the threat had allegedly been made, the parties relationship had improved to the point that the parties were able to interact in a cordial manner on a somewhat frequent basis. Nothing in the

record or the proffered evidence would support the reasonable inference that James felt threatened by Antoan during the intervening two years since the threat was allegedly made.

[18] We acknowledge that James cites to the Indiana Supreme Court's decision in *Littler v. State*, 871 N.E.2d 276 (Ind. 2007), in support of his claim that the trial court abused its discretion in excluding the proffered evidence. In *Littler*, the defendant sought to introduce evidence to corroborate his testimony explaining why he feared that the victim, who happened to be his twin brother, was about to stab him at the time of the shooting. 871 N.E.2d at 278. Specifically, the defendant sought to introduce his mother's testimony regarding the fact that the victim had previously stabbed the defendant and other family members, the victim suffered from ongoing mental illness, the victim's mental illness was untreated, and the victim was in a manic state at the time of the incident. *Id.* The Indiana Supreme Court concluded that the "mother's testimony confirming [the victim's] numerous prior stabbings, his mental condition, and his history of violent behavior would be very probative and relevant to the jury's evaluation of the objective reasonableness of [the defendant's] belief that he needed to use force against [the victim] and would also lead substantial credibility to [the defendant's] assertions." *Id.* at 279.

[19] In *Littler*, the known threat was ongoing as it appeared to be connected to the victim's untreated mental illness. Stated differently, the threat of violent and aggressive behavior by the victim was ongoing, including at the time of the alleged offense. In this case, however, nothing suggests that the alleged threat,

which again was made approximately two years before James shot Antoan, was ongoing or that James continued to fear for his safety. Thus, we find the facts supporting the Indiana Supreme Court's decision in *Littler* to be distinguishable from the facts and circumstances presented in the instant matter.

[20] Upon review, we agree with the trial court's conclusion that given the facts and circumstances of this case, the alleged threat was too remote in time to be relevant to whether James acted in self-defense when he shot Antoan. As such, we conclude that the trial court did not abuse its discretion in excluding the proffered evidence.

[21] The judgment of the trial court is affirmed.

Robb, J., and Crone, J., concur.