Stephen J. TAYLOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 06A05–0711–CR–644.

Court of Appeals of Indiana.

Aug. 4, 2008.

Transfer Denied Oct. 9, 2008.

---

Michael D. Gross, Lebanon, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Stephen Taylor challenges his conviction of and sentence for child molestation, a Class A felony.[1] We affirm.

## FACTS AND PROCEDURAL HISTORY

During the summer of 2006, eight-year-old A.D. was enrolled in a day camp. On June 27, 2006, A.D. and the other campers were swimming in a creek in Lions Park. A.D. told Melissa Rabb, a counselor, that he needed to go to the bathroom. Because the bathrooms were far away, Rabb directed him to a designated spot in the woods. The spot was about fifteen to twenty yards away and allowed her to see the child's shoulders and head.

Taylor approached A.D. and gave him a piggy back ride to the other side of the woods. Taylor said he would "trade" A.D. for a $100 bill. (Tr. at 208.) When A.D. took the money, Taylor put his mouth on A.D.'s penis.

About a minute after A.D. left the area where the campers were swimming, Rabb realized she could not see A.D. None of the other counselors had seen A.D., so Rabb began calling his name and looked for him in the woods. Rabb found him about thirty yards from the designated restroom spot.

Taylor ran away when he heard Rabb calling for A.D., but he left behind a hat. A.D. told Rabb what had happened, and the hat and the $100 bill were turned over to the police.

On August 30, 2006, Officer Brian Stewart received a report of a suspicious person in Hummell Park. Officer Stewart found Taylor in a secluded area. Officer Stewart approached him and asked what his name was. Taylor said his name was Jason Riley. Officer Stewart then asked his date of birth. After a long pause, Taylor gave him a date. Officer Stewart checked whether there was a driver's license, identification card, or warrant matching that information and found nothing. Officer Stewart again asked him for his name and date of birth, and also for his social security number. Taylor said he could not remember his social security number "because he had too many numbers to remember by trying to remember his mom and dad's telephone number in Iowa." (*Id.* at 34.)

Officer Stewart believed Taylor was lying because he paused before giving his

---

1. Ind.Code § 35–42–4–3(a)(1).

date of birth, claimed not to remember his social security number, and would not look at him when he was answering. In Officer Stewart's experience, if a person is not forthcoming with identification, it is often because the person has an outstanding warrant. Concerned for his safety, Officer Stewart asked Taylor if he had any weapons. Taylor said he had a knife. Officer Stewart conducted a pat down and removed a knife, disposable razors, and scissors.

Meanwhile, Officer Christopher Duffer arrived. He asked Taylor if he had lived in Indiana his whole life. Taylor said he had recently come to Indiana from Iowa. Officer Duffer asked if he had an Iowa driver's license, and Taylor said he did not. Officer Duffer then asked how he had gotten to Indiana, and Taylor said he had ridden his bike. Unable to confirm Taylor's identity, the officers decided to leave. Officer Stewart told Taylor he could pick up his personal items once the officers were inside their cars. It was getting close to dark, and Officer Stewart told Taylor he should "move on due to the park closing at dark." (*Id.* at 38.)

The officers conferred briefly, and each felt Taylor was lying and may have an outstanding warrant. They decided to ask what his parents' phone number was, and began walking back toward Taylor. Taylor had gathered his belongings and was pushing his bicycle toward the officers. Officer Stewart asked him what his parents' number was, and Taylor provided a number with a 317 area code. The officers then felt certain Taylor was lying because the number was from the Indianapolis area, rather than Iowa. Officer Stewart told Taylor he knew that was not an Iowa number and "he needed to start being truthful." (*Id.* at 40.)

Taylor paused, then took off on his bicycle. The officers subdued him and placed him under arrest for false informing. They removed the contents of his pockets, which included a large sum of cash and a note that read, "I'll give you $100 if you let me suck your dick. Please!" (Jury Trial Exhibit 3.) The officers asked dispatch to call the number Taylor provided. A woman answered and stated she did not have a son named Jason Riley, but did have a son named Stephen Taylor. It was then discovered Taylor had two outstanding warrants.

A DNA sample was obtained from Taylor pursuant to a warrant. The sample matched DNA from the sweat band of the hat Taylor left when he molested A.D. The trial court denied Taylor's motion to suppress the evidence obtained as a result of his arrest. Taylor was found guilty of child molestation, a Class A felony.

### DISCUSSION AND DECISION

1. *Admission of Evidence*

Taylor argues the items seized from him when he was arrested must be suppressed because they were obtained in an unlawful search and seizure and the DNA evidence must be suppressed as fruit of the poisonous tree. Because we are considering the issue after a completed trial, we review the admission of evidence for an abuse of discretion. *Collins v. State*, 822 N.E.2d 214, 218 (Ind.Ct.App.2005), *trans. denied* 831 N.E.2d 743 (Ind.2005). We consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Id.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Rich v. State*, 864 N.E.2d 1130, 1131 (Ind.Ct.App.2007).

## A. *Fourth Amendment*

 Taylor concedes his initial encounter with the police was consensual. It is clear that "mere police questioning does not constitute a seizure." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).... The Fourth Amendment is not triggered unless an encounter between a law enforcement officer and a citizen "loses its consensual nature." *Bostick*, 501 U.S. at 434, 111 S.Ct. 2382, 115 L.Ed.2d 389. The encounter is consensual and reasonable suspicion is not required if a reasonable person would feel free to "disregard the police and go about his business." *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).

*Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind.2007). Taylor argues the encounter lost its consensual nature when the police re-initiated questioning because they ordered him to stop and blocked the park exit.

Taylor's argument ignores the evidence favorable to the trial court's ruling. At the suppression hearing, Officer Stewart testified:

> ... Officer Duffer and I spoke and we came to the conclusion that we ought to ask the subject for his parents' telephone number.... At that point Officer Duffer and I started to walk back toward that location. The subject had gathered up his personal belongings, had gotten his bicycle and had started pushing it out to ... meet us. At that point I asked him if I could get his parents' telephone number at which point he stopped and he began to give me a three one seven area code with a two seven one telephone number.

(Tr. at 39–40.) On cross-examination, Officer Stewart was asked, "And you stopped [Taylor] before he could even get past you isn't that true?" (*Id.* at 58.) Officer Stewart responded, "I asked him a question and he stopped. I did not physically stop him." (*Id.*) The evidence favorable to the trial court's ruling is that Taylor and the officers were approaching each other. The officers did not show any force or order him to stop, but simply reinitiated their questioning. The officers merely posed an additional question they thought of after the initial encounter, which was concededly consensual.

 In the initial encounter, Taylor paused before giving a date of birth and claimed he could not remember his social security number. He would not make eye contact. Taylor told the officers his parents lived in Iowa, and he claimed to have ridden his bicycle from Iowa. However, when the officers asked for his parents' phone number, he gave a number from the Indianapolis area. The officers had probable cause to arrest Taylor for false informing. *See Griffith v. State*, 788 N.E.2d 835, 840 (Ind.2003) ("Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect committed a criminal act.").

Taylor argues the officers could not arrest him for false informing because they were not conducting an "official investigation of the commission of a crime." Ind. Code § 35–44–2–2(d) provides:

A person who:

> (1) gives a false report of the commission of a crime or gives false information in the official investigation of the commission of a crime, knowing the report or information to be false;

\* \* \* \* \* \*

commits false informing, a Class B misdemeanor....

We find Taylor's argument unpersuasive. The officers were responding to a report of a suspicious person and were attempting to ascertain whether Taylor had any warrants for his arrest. It is only because of Taylor's evasive answers that the officers did not more quickly determine the specific crime on which they should focus their investigation.

> Reading the false informing statute to allow convictions only if police officers are positive a crime has been committed would undoubtedly encourage the cover-up of crimes, by deceit and lying in situations where police suspect, but cannot be certain, that a crime has been committed. Public policy and the interests of justice are not served if that conduct occurs.

*Clancy v. State*, 829 N.E.2d 203, 211 (Ind. Ct.App.2005), *trans. denied* 841 N.E.2d 178 (Ind.2005). The police were not merely fulfilling a ministerial function, but were investigating the possibility of criminal activity. *See id.* at 210. Therefore, we conclude the officers were conducting an official investigation within the meaning of Ind.Code § 35–44–2–2(d)(1).

The officers had probable cause to arrest Taylor, and therefore were permitted to conduct a search incident to arrest. *Starks v. State*, 846 N.E.2d 673, 683 (Ind. Ct.App.2006) ("[A] search incident to a lawful arrest is an exception to the warrant · requirement."), *trans. denied* 860 N.E.2d 588 (Ind.2006). The trial court did not abuse its discretion in determining the evidence was not seized in violation of the Fourth Amendment and admitting it at trial.

### B. *Article 1, Section 11*

█ Although the language of Article 1, Section 11 mirrors the Fourth Amendment, we conduct a separate analysis that focuses on whether the officer's conduct "was reasonable in light of the totality of the circumstances." *Holder v. State*, 847 N.E.2d 930, 940 (Ind.2006). In determining reasonableness, we balance: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id. (quoting Litchfield v. State*, 824 N.E.2d 356, 361 (Ind.2005)).

The officers asked Taylor a few simple questions about his identification. As explained above, the evidence favorable to the trial court's ruling supports a conclusion that the encounter remained consensual even after the officers reinitiated their questioning. The encounter was minimally intrusive until Taylor gave his parents' phone number, at which time the officers had probable cause to arrest him. Once the officers ascertained that Taylor was lying, they had compelling justification to arrest Taylor and search his person. Therefore, the search and seizure did not violate Article 1, Section 11.

### 2. *Taylor's Sentence*

Taylor was sentenced to fifty years, the maximum for a Class A felony. Ind.Code § 35–50–2–4. As aggravators, the trial court found: (1) the offense was committed within the presence or hearing of children; (2) the victim was eight years old, which is "significantly less than 14 years of age as required by the statute;" (3) the harm to the victim was "significant and greater than ordinary;" and (4) Taylor displayed predatory behavior and is likely to reoffend. (Appellant's App. at 54–55.)

The trial court discussed several aspects of the offense and Taylor's character that it found disturbing. Taylor spent time in parks with money and video games—items of interest to children. The trial court characterized this as "predatory behavior,"

and found Taylor was likely to reoffend. (*Id.* at 55.) The trial court noted Taylor had lied to Officers Stewart and Duffer and had not been deterred by a previous arrest for child molesting. The trial court considered Taylor's additional pending charges of child molesting as evidence Taylor was likely to reoffend. The trial court noted Taylor had no prior convictions, but found that was entitled to little weight because of his "flurry of recent criminal activity." (*Id.* at 56.)

■ Taylor first argues the trial court abused its discretion by finding aggravators that are not supported by the record. "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind.2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* A trial court may abuse its discretion by finding aggravators that are not supported by the record or are improper as a matter of law. *Id.* at 490–91.

■ Taylor challenges the trial court's finding the offense was committed in the presence or hearing of children. The State acknowledges there is no evidence in the record that other children saw or heard the crime. Nevertheless, the State argues Taylor's actions showed "complete disregard for the well being and potential harm to the other children." (Appellee's Br. at 15–16.) In support, the State notes that Taylor carried A.D. to another location, demonstrating his knowledge of the presence of other children. This fact, however, tends to show that the other children were unaware of the crime. Therefore, we cannot say this aggravator is supported by the record.

Next, Taylor argues the trial court abused its discretion by using A.D.'s age as an aggravator because his age was also an element of the offense. *See* Ind.Code § 35–42–4–3(a) (statute applies only to children under fourteen years of age). Our Supreme Court recently addressed the use of criminal history as an aggravator and as a fact that elevates the charge in *Pedraza v. State*, 887 N.E.2d 77, 80 (Ind.2008). The Court held this is no longer an inappropriate double enhancement because aggravators do not "enhance" sentences under the advisory sentencing scheme. *Id.* "Still, a trial court that imposed a maximum sentence, explaining *only* that an element was the reason, would have provided an unconvincing reason that might warrant revision of sentence on appeal." *Id.* In Taylor's case, the victim's age enhanced the offense and also was found as an aggravator. In light of *Pedraza*, we cannot say this is *per se* improper; however, we may consider whether the particular facts of the case warrant revision of his sentence when we conduct our independent review of his sentence.

■ Taylor next argues the trial court erred by finding the harm to A.D. was "greater than ordinary." (Appellant's App. at 55.) The trial court noted A.D. has ADHD and is bi-polar; however, there was no evidence these conditions caused him to be more traumatized by the crime than other victims of molestation. A.D.'s mother testified he was having nightmares and was receiving counseling. We have previously recognized that these effects, while not inconsequential, are typical of what victims of molestation experience. *Simmons v. State*, 746 N.E.2d 81, 91 (Ind. Ct.App.2001), *trans. denied* 761 N.E.2d 414 (Ind.2001). Therefore, we cannot say this aggravator is supported by the record.

■ Discussing Taylor's predatory behavior and likelihood to reoffend, the trial court stated, "By giving the boy money, Mr. Taylor *attempted* to instill in this boy the potential to doubt his own innocence. He *tried* to manipulate the boy into being a sort of co-conspirator when this child is completely innocent." (Appellant's App. at 55) (emphasis in original; footnote omitted). Taylor characterizes this statement as speculative. However, the trial court specifically noted A.D.'s mother's testimony that A.D. blames himself.

Furthermore, there was ample evidence Taylor is a predator and likely to reoffend. Taylor abducted A.D. in a park and offered him $100 for the opportunity to perform fellatio on him. About a month later, Taylor was found in a park playing a Pokemon video game. He had several $100 bills and a note that said, "I'll give you $100 if you let me suck your dick. Please!" (Jury Trial Exhibit 3.) Taylor was arrested for child molesting in April 2006, just a few months before he molested A.D. At the time of his sentencing in this case, Taylor had five pending charges of child molesting. The trial court determined this evidence indicated Taylor would not be deterred by contact with the criminal system. *See Monegan v. State*, 756 N.E.2d 499, 503 (Ind.2001) (An arrest may be considered as evidence that "subsequent antisocial behavior on the part of the defendant has not been deterred even after having been subject to the police authority of the State.") (quoting *Sherwood v. State*, 702 N.E.2d 694, 700 (Ind.1998)). In light of Taylor's pattern of visiting parks while equipped with video games, large amounts of cash, and a note requesting sexual favors, we cannot say the trial court abused its discretion.

■ Although two of the aggravators found by the trial court are not supported by the record, we may affirm if we can say with confidence that the trial court would have imposed the same sentence had it considered only the proper aggravators. *Anglemyer*, 868 N.E.2d at 491. The trial court devoted most of its discussion to Taylor's predatory behavior and the likelihood he would reoffend. This aggravator is well-supported and cannot be taken lightly. Therefore, we are confident the trial court attributed substantial weight to this aggravator and would not have imposed a different sentence if it did not consider the two aggravators we have found unsupported.

■ Taylor also asks us to review his sentence under Appellate Rule 7(B). "Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution 'authorize[ ] independent appellate review and revision of a sentence imposed by the trial court.' " *Anglemyer*, 868 N.E.2d at 491. We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We give deference to the trial court's decision, recognizing the special expertise of the trial court in making sentencing decisions. *Barber v. State*, 863 N.E.2d 1199, 1208 (Ind.Ct.App.2007), *trans. denied* 878 N.E.2d 208 (Ind.2007). The defendant bears the burden of persuading us the sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007).

The evidence of Taylor's predatory character has been outlined above. Taylor stresses his lack of criminal history and asserts he could not have avoided prosecution for thirty-six years if this offense were not an isolated event. Given the string of coincidences that led the police to connect him with the molestation of A.D., we do not rate his ability to avoid detection so poorly.

In this case, Taylor chose a young child who did not know him, removed him to an isolated place, offered him money, instructed him not to tell anyone about the incident, and thus did everything he could to avoid detection. He lied to Officers Stewart and Duffer to prevent them from determining he had a warrant for his arrest. Therefore, Taylor's sentence is not inappropriate in light of the nature of the offense and the character of the offense.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.