ANGELO PIERRE DOVE, Appellant-Defendant,
v.
STATE OF INDIANA, Appellee-Plaintiff.
No. 45A03-0905-CR-232.
Court of Appeals of Indiana.
January 29, 2010.
MARCE GONZALEZ, JR., Dyer, Indiana, ATTORNEY FOR APPELLANT.
GREGORY F. ZOELLER, Attorney General of Indiana, WADE JAMES HORNBACHER, Deputy Attorney General, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE.

NOT FOR PUBLICATION

MEMORANDUM DECISION
MAY, Judge.
Angelo Dove killed his girlfriend, Kelly Cleveland. He was charged with murder, then agreed to plead guilty but mentally ill to voluntary manslaughter. He received a forty-five year sentence, which he argues is inappropriate. We affirm.

FACTS AND PROCEDURAL HISTORY
According to the stipulated factual basis, Dove and Cleveland were boyfriend and girlfriend and were living together. On January 28, 2003, they got into an argument, and Dove stabbed Cleveland multiple times in the neck, chest, back, wrists, and fingers. Cleveland died from the wounds, and Dove laid with her for four or five days thereafter. Dove covered Cleveland's body when it began to smell.
Dove was charged with murder. On March 24, 2003, defense counsel asked that two psychiatrists be appointed to determine whether Dove was sane at the time of the offense and whether he was competent to stand trial. The court appointed Dr. Michael Dimitroff and Dr. R. Bhawani Prasad.
Dr. Dimitroff opined Dove was insane at the time of the offense, but was competent to stand trial. In his interview with Dr. Dimitroff, Dove acknowledged using marijuana on the day he killed Cleveland and described the killing as if it had been a dream.
Dr. Prasad noted Dove had been hospitalized twice for psychiatric problems. On October 6, 2002, Dove was treated in an emergency room because he thought he was Jesus Christ. He was diagnosed with "acute toxic psychosis due to marijuana" and was released after being treated with Haldol. (Appellant's App. at 222.) From November 30 to December 1, 2002, Dove was treated at Parkview Behavioral Center in Fort Wayne for "drug induced psychosis."[1] (Id.) Dove "refused followup and demanded discharge." (Id.)
Dove told Dr. Prasad he had been arguing with Cleveland because she wanted him to get a job, and then he "went to sleep." (Id. at 221.) When he awoke, he had a knife in his hand. Cleveland was on the floor bleeding, and she said, "I love you." (Id.) He stayed in the house for five days. Then Dove thought Cleveland was telling him to go to "the mountains," which he interpreted to be something on Taft Street.[2] (Id.)
While Dove was wandering around looking for "the mountains," he got frostbite on his feet. Dove checked himself into a hospital under an assumed name, then checked himself out before treatment was complete. His feet became gangrenous, and he returned to the hospital. While he was being treated for gangrene, he was seen by a psychiatrist, who did not notice any psychotic symptoms.
Dr. Prasad opined Dove was competent to stand trial. As to Dove's sanity at the time of the offense, Dr. Prasad wrote:
Two months before his alleged offense, he was psychotic under the influence of drugs but it cleared up rapidly. After that there is no record of any psychotic or non-psychotic symptoms. On February 10, 2003 he admitted himself under a false name for frostbite and he was not noted to exhibit any abnormal symptoms or behavior and he signed out as soon [as] he began to get better. On February 22, 2003 he was admitted . . . for gangrene. At that time he was not psychotic and was mildly depressed.
The report of David Moore, Deputy Prosecuting Attorney, shows that at the time of his arrest there were no obvious signs of disorganized thinking. All this indicates that after December 1, 2002, he did not suffer from any psychiatric illness.
(Id. at 222-23) (emphasis in original).
To resolve the conflict in the opinions of the psychiatrists, the court appointed Dr. Douglas W. Caruana to evaluate Dove. Dr. Caruana believed Dove was not competent to stand trial.[3] Because so much time had passed since Dr. Dimitroff's report, the court ordered him to update it. Dr. Dimitroff felt Dove's condition had deteriorated and he was not competent to stand trial.[4]
On May 3, 2004, the court ordered Dove committed, and he was transported to Logansport State Hospital. At Logansport, Dove was treated by Dr. Danny J. Meadows. On January 30, 2006, the Indiana Family and Social Services Administration sent the trial court a letter stating Dr. Meadows had found Dove competent to stand trial. Attached to the letter was Dr. Meadows' "Comprehension to Stand Trial Report," which was dated January 26, 2006. (Id. at 235.) Dr. Meadows indicated Dove's diagnosis was schizophrenia, undifferentiated type. Dove had been treated for psychotic symptoms, including auditory hallucinations, paranoia, and delusional ideas. At his most recent interview, Dove was cooperative, had good memory, had coherent thought processes, and had adequate communication skills. He demonstrated "good comprehension" of "his charge," "the possible sentence if found guilty," and "of legal proceedings." (Id. at 238.) Therefore, Dr. Meadows believed Dove had become competent to stand trial.
On February 13, 2006, the court ordered that Dove be transported from Logansport to the Lake County Jail. On November 2, 2007, the State and defense counsel filed a joint motion requesting appointment of a psychologist because Dr. Dimitroff had moved out of state and would not be available to testify.
The court appointed Dr. Jeffrey Wendt, who filed a report on March 5, 2008. Dove reported his symptoms developed in mid-2002, when he thought the TV was giving him messages. He started to believe he was "the next coming of Jesus Christ." (Id. at 212.) He thought Jews and Iraqis were aware of his identity and were conspiring against him. Dove thought he needed to kill himself to keep other people safe, so he asked a friend for a gun, and this led to his hospitalization in October 2002. After that hospitalization, Dove continued to have delusional thoughts, but he kept them to himself because he did not want to go back to the hospital. The day he killed Cleveland, Dove smoked some marijuana and there was a period of time that he could not remember. He found himself naked with a knife in his hand, and Cleveland was bloody and lying on the floor.
During his interview with Dr. Wendt, Dove's thoughts were "goal-directed and followed a logical progression." (Id. at 215.) He demonstrated adequate understanding of legal concepts and procedures; therefore, Dr. Wendt opined he was competent to stand trial.
Dr. Wendt diagnosed Dove with schizoaffective disorder, bipolar type. "This disorder combines elements of Schizophrenia (e.g., hallucinations and delusional thought) with symptoms of a mood disorder (e.g., depression or mania)." (Id. at 218.) Dr. Wendt believed Dove's substance use contributed to the development of his symptoms, but the symptoms also existed "independently of any substance intoxication or withdrawal." (Id.) Dr. Wendt opined that "the psychotic symptoms stemming from his psychiatric condition were the primary factor influencing his behavior" when he killed Cleveland. (Id.) Therefore, Dr. Wendt concluded Dove did not have the capacity to appreciate the wrongfulness of his conduct at the time of the offense.
On January 23, 2009, the parties submitted a plea agreement in which Dove agreed to plead guilty but mentally ill to an amended charge of voluntary manslaughter. The agreement left sentencing to the discretion of the court.
On April 20, 2009, the court accepted the agreement and conducted a sentencing hearing. Dove called Dr. Wendt, who testified in accordance with his report. The State asked Dr. Wendt why no psychotic symptoms were noted when Dove was hospitalized for frostbite and gangrene. Dr. Wendt explained the symptoms can wax and wane, and Dove tried to minimize his symptoms to avoid psychiatric hospitalization. Dr. Wendt opined Dove did not seek treatment for his psychiatric problems because "his insight was so impaired by the nature of the disorder." (Tr. at 38.)
Dove made a statement in which he claimed he did not "deserve to be put in prison" because he was "a rehabilitated man, with a clear and sound mind." (Id. at 98.) He stated several times he did not murder Cleveland and referred to her death as "a tragic incident due to the mental problems I was having at the time." (Id. at 99.)
The State admitted into evidence photos from the scene, the coroner's report, Dr. Prasad's report, and police reports that Cleveland had made against Dove. The coroner's report identifies thirty distinct cuts or stab wounds on Cleveland's body and indicates that she bled to death.
The police reports indicate that on November 14, 2002, Dove hit Cleveland in the back of the head and smashed Cleveland's car window. The pre-sentence investigation report ("PSI") indicates Dove was charged with domestic battery and criminal mischief. A no contact order was issued, but no final disposition was listed. A report from December 24, 2002 indicates Dove broke into Cleveland's house, cut the phone lines, and injured Cleveland's left shoulder and right eye. Apparently, no charges had been filed based on this incident at the time the PSI was completed.
The PSI also reflects Dove was convicted of three misdemeanors in 2002. On November 19, 2002, he was convicted of driving while suspended and received a suspended sentence. The PSI states he never reported to probation and a petition to revoke was filed. A warrant was issued, and the case was still open at the time the PSI was completed. On December 2, 2002, he was convicted of resisting law enforcement and public intoxication. He received a suspended sentence on each count. On December 30, 2002, Dove failed to appear for a hearing, and a warrant was issued. The warrant was still active at the time the PSI was completed.
The court found Dove's criminal history was an aggravating circumstance, but did not consider it significant. The court found the nature and circumstances of the offense were a significant aggravator:
. . . [T]he defendant stabbed the victim numerous times in a manner that can only be properly characterized as a bludgeoning! He then laid with her until she died. Further, he remained in the house with the victim's corpse until it started to smell some four or five days later. The killing was heinous and the defendant's subsequent actions were ghoulish, such as shocks the senses. Also, this was a boyfriend/girlfriend "live-in" relationship and therefore, the defendant was in a position of trust with the victim.
(Appellant's App. at 86-87.)
The court recognized Dove's guilty plea as a mitigating circumstance, but did not give it significant weight because Dove "received a substantial benefit from the plea in that the defendant was facing a Murder charge in which the evidence strongly favored conviction." (Id. at 87.) The court assigned Dove's mental illness moderate weight due to the conflicting evidence of the extent to which his illness contributed to the offense. The trial court sentenced Dove to forty-five years.

DISCUSSION AND DECISION
Dove argues his sentence is inappropriate. We may revise a sentence if, after "due consideration of the trial court's decision," we find the sentence "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Dove committed his offenses when the presumptive sentencing scheme was in effect.[5]See Beer v. State, 885 N.E.2d 33, 49 n.19 (Ind. Ct. App. 2008) (we apply the sentencing statute in effect at the time the defendant committed the offense). The presumptive sentence for a Class A felony was thirty years, and the maximum was fifty. Ind. Code § 35-50-2-4 (2003). The presumptive sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." Weiss v. State, 848 N.E.2d 1070, 1072 (Ind. 2006). "Courts may then deviate from the presumptive sentence based upon a balancing of the aggravating and mitigating factors . . . ." Sloan v. State, 794 N.E.2d 1128, 1135 (Ind. Ct. App. 2003), trans. denied.
We agree with the trial court's assessment of the nature of the offense.[6] Dove stabbed Cleveland at least thirty times. Cleveland did not die immediately, but Dove remained with her and let her die. Dove acknowledges his attack on Cleveland was "egregious," but argues it was a product of his mental illness. (Appellant's Br. at 7.)
The trial court acknowledged Dove's mental illness, but gave it moderate weight because the evidence was conflicting as to the extent to which it affected his behavior. Dove took steps to conceal the odor of Cleveland's decaying body. He was twice treated at a hospital soon after the killing, but doctors did not note any psychotic symptoms. Dove admitted himself under an assumed name. Dr. Prasad's report concluded Dove's psychiatric problems were transitory and primarily drug-induced. Dr. Wendt believed Dove's psychiatric problems existed independently of drug use, but did acknowledge that drug use was a contributing factor.
Dove notes that, although the trial court found he received a significant benefit from his plea, his sentence was still within the range allowable for murder. Forty-five years is an enhanced sentence for a Class A felony; however, it is the minimum sentence for murder. If Dove had been convicted of murder, the trial court would have had to begin with the presumptive sentence of fifty-five years. See Ind. Code § 35-50-2-3. Given the heinous nature of the killing, it is unlikely Dove would have received the minimum sentence if convicted of murder. Therefore, we cannot say he did not receive a benefit from his plea.
Given the nature of the killing, Dove's criminal history, the conflicting evidence regarding his mental illness, and the benefit he received from his plea, we cannot say a forty-five year sentence is inappropriate. Cf. Ankney v. State, 825 N.E.2d 965, 977 (Ind. Ct. App. 2005) (reducing a sentence because Ankney's actions were "the obvious product" of a well-documented and long-standing mental illness), trans. denied.
Affirmed.
DARDEN, J., and KIRSCH, J., concur.
NOTES
[1] According to the report of Dr. Jeffrey Wendt, who was appointed later to evaluate Dove, Dove tested positive for marijuana and PCP.
[2] Dr. Wendt reported that Dove thought "the mountains" were a "raised train viaduct." (Appellant's App. at 214.)
[3] According to Dr. Caruana's report, Dove did not know where he was and did not know the date. "He struggled to maintain clear thinking and responding with regard to the charges and legal proceedings. His responses to simple mental questions were blended with personal and nonsensical statements." (Appellant's App. at 225.)
[4] During Dr. Dimitroff's second interview with Dove, Dove said he wanted light-colored clothing, because dark-colored clothing suppressed his power. Dove thought he was Jesus and thought he could talk to the TV, the moon, and the sun. He had difficulty with cognitive tasks.
[5] Dove consented to judicial fact-finding in his plea agreement, thus waiving any rights he would have under Blakely v. Washington, 542 U.S. 296 (2004), reh'g denied.
[6] Dove argues the trial court erred by treating his "live-in" relationship with Cleveland as a position of trust. This argument is more appropriately framed as whether the trial court abused its discretion in recognizing an aggravating factor. See King v. State, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (explaining the difference between the abuse of discretion standard and the App. R. 7(B) standard). We note the court's written sentencing statement treats Dove's relationship with Cleveland as a part of the nature and circumstances of the offense, not as a separate aggravator.

Dove notes the written sentencing statement incorrectly states Dove has a history of misdemeanor and felony convictions and argues we should not consider this aggravator because "it cannot be ascertained how the court's reliance on the mistaken belief of a felony record was factored in." (Appellant's Br. at 8.) This also is an issue reviewed for abuse of discretion. See Taylor v. State, 891 N.E.2d 155, 161 (Ind. Ct. App. 2008) (trial court abuses its discretion if it finds aggravators not supported by the record), trans. denied, cert. denied, reh'g denied. However, even if a court finds an improper aggravator, we may affirm "if we can say with confidence that the trial court would have imposed the same sentence had it considered only the proper aggravators." Id. at 162. The trial court found Dove's criminal history was not a significant aggravator. Therefore, we do not believe the trial court relied heavily on the presence or absence of felony convictions.