**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK I. COX**
The Mark I. Cox Law Office, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH FRYE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  89A05-1211-CR-577 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory A. Horn, Judge
Cause No. 89D02-1111-MR-3

**August 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, what should have been a night of Halloween fun and good-natured frights turned into an all-too-real nightmare when Kenneth Frye became angry because Percy Campbell refused to pay a $20 debt. A confrontation ensued between the two men, and Frye was escorted out of the bar where the confrontation had occurred. Frye returned to the bar a few minutes later and shot Campbell, killing him almost immediately.

Frye was convicted of Murder,[1] a felony. Following his conviction, Frye was sentenced to fifty-five years imprisonment. Frye now appeals, arguing that his sentence is inappropriate in light of the nature of the offense and his character. Concluding that because of the egregious nature of the offense along with Frye's criminal history and inability to maintain stable employment, his fifty-five-year sentence is not inappropriate, and we decline his invitation to revise it.

FACTS

Frye supported himself by doing "odd jobs," and spent most of his evenings drinking at the Knuckleheads Bar in Richmond. Tr. p. 595. Frye admitted that he usually carried a .25 caliber handgun with him when he went out at night. Frye would socially drink with three of his friends, and the group would take turns buying pitchers of beer. Sometimes Campbell joined the group; however, Campbell "was always short on money" and wanted to drink with them without paying. Id. at 571.

One night in early October 2011, Campbell, who was wearing a uniform shirt from a new job, approached Frye and his friends, and asked if he could have a drink with

_____

[1] Ind. Code § 35-42-1-1(1).

2

them. Despite Campbell's new job, he needed someone to loan him money for drinks because he had yet to be paid, but he promised to "pay them back" when he received his first paycheck. Tr. p. 572. Frye agreed to loan Campbell money for drinks and bought four pitchers of beer for $20.

Three or four weeks later, on October 31, 2011, Frye saw Campbell again. On that night, Frye was drinking alone at Knuckleheads and "probably [drank] about four (4) pitchers" of beer. Id. at 575. Frye asked Campbell about the debt, and Campbell agreed to repay Frye later that night at Alley Kats, a nearby bar.

Frye went to Alley Kats around 1:00 a.m. to collect his debt. According to Frye, when he approached Campbell about the debt, Campbell was dismissive. Frye described Campbell as "showin' off for his people" at Alley Kats and "actin' like he didn't know me now." Id. at 579. Frye walked away from Campbell, but then returned a few minutes later, determined to be repaid. Witnesses, however, described Frye as the aggressor and claimed that Frye repeatedly punched Campbell in the face until Campbell grabbed him and held him in a headlock.

The confrontation ended when the bar owner and another employee told Frye to leave the bar and escorted him outside. Campbell was allowed to remain in the bar because the owner believed that Frye was the aggressor. A few minutes later, Frye walked back into the bar, raised his gun, and shot at Campbell. Frye claims that the first shot was fired at Campbell's knees, but no witness account or physical evidence supports that assertion. Frye continued walking toward Campbell and fired a second shot that

3

struck Campbell in the eye. Campbell died almost instantly from a brain injury. Frye immediately ran from the bar.

`       On November 3, 2011, the State charged Frye with murder. Frye's jury trial commenced on September 24, 2012, and on September 27, the jury found him guilty as charged.

On October 18, 2012, the trial court held a sentencing hearing, during which the trial court determined that the aggravating factors included Frye's history of criminal behavior. More particularly, the trial court stated:

> Although not a significant criminal history, this Defendant has four (4) prior criminal cases resulting in at least three (3) Misdemeanor convictions and another case out of the State of Tennessee where it is unclear whether the four (4) convictions are for infractions or misdemeanors.

Appellant's App. p. 67.

The trial court concluded that the sole mitigating circumstance was Frye's remorse and that the mitigating and aggravating factors "balance one another." Id. Thus, the trial court sentenced Frye to the advisory term of fifty-five years[2] in the Department of Correction with no time suspended. Frye now appeals.

DISCUSSION AND DECISION

Frye's sole argument on appeal is that his fifty-five-year sentence is inappropriate pursuant to Appellate Rule 7(B). Frye requests that this Court revise his sentence to fifty-five years with ten years suspended.

---

[2] Indiana Code section 35-50-2-3 provides, relevant part, that "[a] person who commits murder shall be imprisoned for a fixed term of between forty-five (45) and sixty-five (65) years, with the advisory sentence being fifty-five (55) years."

Under Rule 7(B), this Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The burden is on the defendant to persuade us that his sentence is inappropriate. Taylor v. State, 891 N.E.2d 155, 162 (Ind. Ct. App. 2008).

In this case, because of the way in which Frye frames his arguments, the nature of the offense and his character are intertwined. Specifically, Frye vigorously argues that his sentence is inappropriate because this brutal crime was completely out of character for him as supported by the shock of those who know him. Additionally, Frye highlights the fact that given his demeanor, even the trial court stated that it would not have believed that he would have committed this crime. Tr. p. 761. Finally, Frye points to his remorse, as acknowledged by both the trial court and his outreach pastor. Id. at 748; Appellant's App. p. 67.

While we do not dispute Frye's assertions, the fact remains that Campbell lost his life because Frye chose to return to the bar from where he had just been removed, pull out a gun, and shoot Campbell in the eye, killing him almost instantly. Tr. p. 339-40. Campbell died for what appears to be no more than a $20 debt and some lost pride. The nature of this offense is so violent, the fact that it was out of character for Frye avails him of nothing.

As for Frye's character outside of the instant offense, we again do not dispute the trial court's determination that Frye is remorseful or even Frye's assertion that this crime

5

is out of character for him. However, while Frye's criminal history is not "significant," consisting of misdemeanors and infractions, he nevertheless has one, and it spans two states. Appellant's App. p. 67. Additionally, Frye, who was twenty-nine years old at sentencing, had not had steady employment in "a couple of years." Tr. p. 595. Thus, in light of these circumstances, we decline Frye's invitation to revise his sentence to fifty-five years with ten years suspended.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.