## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Michael Frischkorn
Frischkorn Law, LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Denise A. Robinson
Senior Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessie Rodarmel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 31, 2017

Court of Appeals Case No.
41A01-1610-CR-2483

Appeal from the Johnson Circuit Court

The Honorable Terry Snow, Special Judge

Trial Court Cause No.
41C01-1410-F1-19

**Bradford, Judge.**

# Case Summary

In August of 2016, a jury found Appellant-Defendant Jessie Rodarmel guilty of molesting his two, young step-daughters and disseminating pornography to these same step-daughters as well as to his young step-son. The trial court subsequently sentenced Rodarmel to an aggregate term of thirty years, with twenty-five years executed and five years suspended to probation. On appeal, Rodarmel raises two evidentiary challenges. He also contends that his sentence is inappropriate. Because we find Rodarmel's evidentiary challenges to be without merit and conclude that his sentence is not inappropriate, we affirm.

# Facts and Procedural History

During the summer of 2014, Lid.K., Lil.K., and K.K. were staying with their mother and step-father, Rodarmel, in an apartment in Greenwood. At the time, Lid.K. was nine years old and Lil.K. was eleven years old. K.K. was also a minor.

## A. Events Involving Lid.K. and Lil.K.

At some point during the summer of 2014, Lid.K. asked Rodarmel about how "babies were made." Tr. Vol. III, p. 134. Rodarmel responded by calling Lid.K. and Lil.K. into the bedroom he shared with their mother and showing the girls a video depicting a naked male and female "ma[king] love." Tr. Vol. III, p. 135. Lid.K. clarified that this meant that the male put his penis inside the female's vagina. Lid.K. indicated that they watched the video "probably …

around 20 times." Tr. Vol. III, p. 137. Lil.K. subsequently indicated that these videos made her feel uncomfortable.

[4] Rodarmel also showed the girls a flesh colored item "that people use during sex" that looks like a "fake male" penis. Tr. Vol. III, p. 138, 175. Rodarmel instructed the girls to touch the item with their hands. Rodarmel indicated that he was showing the item to the girls "[b]ecause [they] have to know." Tr. Vol. III, p. 177. Rodarmel would also tell Lid.K. that "you and your sister are pretty." Tr. Vol. III, p. 144.

[5] On at least some occasions while watching the pornographic videos, Rodarmel took his pants off and instructed Lid.K. to put her mouth on his penis. Once her mouth was on Rodarmel's penis, Lid.K. would "go up and down" because "that's what [she] was supposed to do." Tr. Vol. III, p. 140. Lid.K. knew to stop when "stuff came out." Tr. Vol. III, p. 141. The "stuff" would go on a blanket, on Rodarmel, or in Lid.K.'s mouth. On at least one occasion after ejaculating into Lid.K.'s mouth, Rodarmel instructed Lid.K. to swallow. Lid.K. complied, later indicating that the "stuff" tasted "salty." Tr. Vol. III, p. 141. On another occasion while the girls where both in Rodarmel's bedroom, Rodarmel instructed both girls to, at the same time, "put [their] mouth on [his] balls." Tr. Vol. III, p. 148. The girls complied with this instruction.

[6] Rodarmel also instructed Lil.K. to touch his penis with her hands and to put her mouth on his penis. Lil.K. observed that after she put her mouth on Rodarmel's penis, a liquid would "come out of" his penis. Tr. Vol. III, p. 181.

When this liquid would get into her mouth, Lil.K. "spit it out" because it tasted "gross." Tr. Vol. III, p. 182. On at least one occasion Rodarmel instructed Lil.K. to "keep going" after liquid came out of his penis. Tr. Vol. III, p. 182. Rodarmel promised that Lil.K. "would be ungrounded" if she did.[1] Tr. Vol. III, p. 182. Rodarmel also offered to "pretty much give [Lil.K.] whatever [she] want[ed] and ice cream and money" if she complied with his instructions. Tr. Vol. III, p. 182.

[7] Lil.K. did not want to engage in any sexual activities with Rodarmel. However, Rodarmel told Lil.K. that she had "to learn this … because you have to know." Tr. Vol. III, p. 180. Rodarmel also told Lil.K. that she "would get in really big trouble and [she] would be grounded forever" if she did not do as instructed. Tr. Vol. III, p. 180. Lil.K. subsequently described Rodarmel's penis as being "wrinkly and gross" and darker than the fake one that Rodarmel had shown the girls. Tr. Vol. III, p. 179.

[8] Lid.K. did not initially report Rodarmel's actions because Rodarmel told her that if she did, he would "get in trouble" with Lid.K.'s biological father. Tr. Vol. III, p. 148. Lil.K. did not report Rodarmel's actions because she was afraid that if she did, she would be taken away from her mother and that her mother "wouldn't like [her]." Tr. Vol. III, pp. 183-84.

---

[1] Lil.K. indicated at trial that she was grounded for being rude to a friend.

At the end of the summer, Lid.K. and K.K. went back to their biological father's home.[2] "Towards the end of September/early October," Lid.K.'s father observed that Lid.K. was "acting off" and "just didn't seem the same." Tr. Vol. II, p. 191. Lid.K.'s father "asked her what was going on." Tr. Vol. II, p. 191. Initially, Lid.K. would not answer, but she eventually told her father about Rodarmel's actions. After learning of Rodarmel's actions, Lid.K.'s father contacted the girls' mother. Their mother spoke with Lil.K. about Lid.K.'s allegations. When questioned about Rodarmel's actions, Lil.K. "froze in her bed, and she did not want to look at [her mother]." Tr. Vol. II, p. 232. When her mother asked again and told her "it's okay, regardless of what the answer is," Lil.K. "broke down crying" and corroborated the information provided by Lid.K.. Tr. Vol. II, p. 232. The girls' mother and Lid.K.'s father then decided to report the allegations to the police.

## B. Events Involving K.K.

Also during the summer of 2014, Rodarmel "showed [K.K.] pornography." Tr. Vol. III, p. 90. Rodarmel approached K.K. one day and told him "to get off [his] mother's phone because [they] were running out of data because [K.K.] had been watching pornography on [his] mother's phone." Tr. Vol. III, p. 91. Rodarmel then plugged a blue hard drive into the computer and showed K.K. how to access numerous files containing pornography. The files depicted men

---

[2] Lid.K. and K.K. lived with their father during the school year.

and women engaging in both sexual intercourse and fellatio. After showing K.K. the images stored on the blue hard drive, Rodarmel gave the hard drive to K.K. Rodarmel instructed K.K. to keep the hard drive away from his mother and his sisters. Eventually, K.K. deleted all of the files that had been stored on the hard drive so that he could use it for additional storage for his Xbox gaming console.

## C. Rodarmel's Police Interview

[11] After the girls' mother and Lid.K.'s father reported Rodarmel's actions, Detective Thomas Wood was assigned the lead detective on the investigation. On October 6, 2014, Detective Wood attempted to contact Rodarmel first on his cell phone and second at his place of employment. Detective Wood and Rodarmel made arrangements for Rodarmel to come to the Greenwood Police Department (the "police department") the next day for an interview.

[12] On October 7, 2014, Rodarmel drove himself to the police department for his interview with Detective Wood. After Rodarmel arrived at the police department, Detective Wood met Rodarmel at the entrance escorted him to the room where the interview would take place. Detective Wood advised Rodarmel that he was not under arrest, that he was free to leave at any time, and that the door to the interview room would be closed for privacy, not confinement, purposes. The door remained unlocked during the interview and Rodarmel later acknowledged that he told Detective Wood that he understood that he was free leave the police station at any time.

Detective Wood advised Rodarmel about the allegations that had been made against him. During his interview with Detective Wood, Rodarmel repeatedly denied any sexual misconduct with either Lil.K. or Lid.K., but admitted that he had disseminated pornography to the girls and to K.K. At the conclusion of the interview, Rodarmel was "free to go" and drove himself away from the police station. Tr. Vol. III, p. 56.

## D. Procedural History

Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Rodarmel with two counts of Level 1 felony child molesting and three counts of Level 6 felony dissemination of matter harmful to minors. Following a multi-day jury trial, which commenced on August 15, 2016, Rodarmel was found guilty of all counts. The trial court subsequently sentenced Rodarmel to an aggregate term of thirty years, with twenty-five years executed and five years suspended to probation. This appeal follows.

# Discussion and Decision

## I. Evidentiary Issues

Rodarmel raises two evidentiary challenges on appeal. First, he contends that the trial court abused its discretion in admitting into evidence his statements to Detective Wood regarding the dissemination of pornography to the children. He also contends that the trial court abused its discretion in excluding evidence

relating to other incidents of molestation allegedly suffered by Lid.K. and Lil.K..

[16]

> The admission or exclusion of evidence is entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004). We will reverse a trial court's decision only for an abuse of discretion. *Id.* We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Taylor v. State*, 891 N.E.2d 155, 158 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.* In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. *Oldham v. State*, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002).

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). "Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of other evidence admitted." *Id.* (citing *Pavey v. State*, 764 N.E.2d 692, 703 (Ind. Ct. App. 2002)). "When evidence is erroneously excluded, reversal is only required if the error relates to a material matter or substantially affects the rights of the parties." *Farris*, 818 N.E.2d at 67. "[T]he trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory." *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008) (citing *Gonser v. State*, 843 N.E.2d 947, 950 (Ind. Ct. App. 2006)).

# A. Statements to Detective Wood

During his interview with Detective Wood, Rodarmel denied engaging in any inappropriate sexual conduct with either Lil.K. or Lid.K. but admitted that he had taught Lil.K. and Lid.K. about sex by watching pornography. He also admitted that he had given K.K. a flash drive containing pornography. Rodarmel contends on appeal that the trial court abused its discretion in admitting his statements relating to the dissemination of pornography into evidence. Specifically, Rodarmel argues that the trial court abused its discretion in admitting his statements into evidence because Detective Wood did not inform him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).[3]

In *Luna v. State*, 788 N.E.2d 832, 834 (Ind. 2003), the Indiana Supreme Court held that "a person who goes voluntarily for a police interview, receives assurances that he is not under arrest, and leaves after the interview is complete has not been taken into 'custody' by virtue of an energetic interrogation so as to necessitate *Miranda* warnings." Applying this holding to the facts of the instant matter, it is clear from the record that Rodarmel was not "in custody" for purposes of *Miranda* when he spoke to Detective Wood. The record reveals that Rodarmel drove himself to the police department for his interview with

---

[3] In *Miranda*, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. The Supreme Court explained that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*.

Detective Wood. After Rodarmel arrived at the police station and was escorted to an interview room, Detective Wood advised Rodarmel that he was not under arrest, that he was free to leave at any time, and that the door to the interview room would be closed for privacy, not confinement, purposes. The door remained unlocked during the interview and Rodarmel later acknowledged that he told Detective Wood that he understood that he was free to leave the police station at any time. Importantly, at the conclusion of the interview, Rodarmel was "free to go" and drove himself away from the police station. Tr. Vol. III, p. 56. Given these facts in light of the Indiana Supreme Court's holding in *Luna*, we conclude that Rodarmel was not "in custody" for purposes of *Miranda* when he spoke to Detective Wood.

## B. Evidence of Prior Sexual Abuse

[19] Rodarmel sought to introduce evidence at trial that K.K. had engaged in sexually inappropriate behavior with Lid.K. and Lil.K. both prior to and during the same time period as the girls were subjected to sexual abuse by Rodarmel. Generally speaking, the Indiana Rape Shield Act (the "Act"), as codified at Indiana Code section 35-37-4-4 and Indiana Evidence Rule 412, prohibits admission of evidence relating to a victim's other sexual conduct. Rodarmel concedes on appeal that none of the exceptions to this general prohibition apply to the instant matter.

[20] Instead, he argues that the Act is unconstitutional as applied to him. Specifically, Rodarmel argues that exclusion of evidence relating to the other sexual abuse allegedly suffered by Lid.K. and Lil.K. violates his right to cross-

examine witnesses under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution.

> The right to cross examination is not absolute. *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir. 1993). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). "Furthermore, the right to confront witnesses 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Tague*, 3 F.3d at 1137 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)).

*Oatts v. State*, 899 N.E.2d 714, 722 (Ind. Ct. App. 2009).

[21] The constitutionality of the Act "'as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis.'" *Id*. (quoting *Williams v. State*, 681 N.E.2d 195, 201 (Ind. 1997)).

> The Indiana Supreme Court has held that [the Act] does not violate a defendant's Sixth Amendment right to confront witnesses absent a showing of actual impingement on cross examination. *Thomas v. State*, 471 N.E.2d 677, 679 (Ind. 1984), *reh'g denied*. Thus, the trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination. *See Lagenour v. State*, 268 Ind. 441, 444-45, 376 N.E.2d 475, 478 (1978).

*Oatts*, 899 N.E.2d at 722. When considering whether the exclusion of the proffered evidence violated one's right to confrontation, we examine both the

"'effect of the precluded evidence'" on the individual's Sixth Amendment rights and the "'[S]tate's interest in excluding the evidence at issue.'" *Id*. (quoting *Tague*, 3 F.3d at 1137-38).

[22] In arguing that the exclusion of the proffered evidence violated his right to cross-examination, Rodarmel relies on the so-called "sexual innocence inference theory."[4] In *Oatts*, we adopted what has been referred to as the "compromise approach" to questions involving the sexual innocence inference theory. *Id*. at 724-25. Under this approach, the burden is on the defendant "to show that the prior sexual act occurred and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the knowledge to imagine the molestation charge." *Id*. at 724. Upon review, we conclude that Rodarmel failed to meet this burden.

[23] First, with regard to Lid.K., the proffered evidence indicated that inappropriate sexual conduct, *i.e.*, placing Lid.K.'s mouth on K.K.'s penis, allegedly occurred in late September or early October of 2014. The evidence admitted at trial indicated that Rodarmel's inappropriate sexual conduct with the girls occurred

---

[4] The sexual innocence inference theory is based on the premise that because young children are generally ignorant of matters relating sexual conduct, a child victim's ability to describe sexual conduct may in and of itself convince the jury that the charged conduct occurred. *Oatts*, 899 N.E.2d at 724 (citing *Grant v. Demskie*, 75 F. Supp. 2d 201, 213 (S.D.N.Y. 1999)). The theory reasons that the defense should have the opportunity to offer evidence that the victim had previously acquired sufficient knowledge to fabricate a charge against the defendant because the child had acquired sexual experience with someone else before he or she accused the defendant. *Id*. (citing *Grant*, 75 F. Supp. 2d at 213).

during the summer months, *i.e.*, June and July of 2014, or before the alleged conduct between Lid.K. and K.K. occurred.

[24] The only proffered evidence relating to inappropriate sexual behavior between Lid.K. and K.K. that is alleged to have occurred before Rodarmel's conduct was vague assertions that (1) at some point, Lid.K. walked into a room while K.K. was watching pornography and (2) five or six years ago Lid.K. touched K.K.'s penis with her hand. As to the pornography, K.K. indicated that he turned the pornography off as soon as Lid.K. entered the room. As such, it is unknown whether Lid.K. even saw any pornographic images. In addition, we cannot say that the act of touching another's penis with one's hand is sufficiently similar to engaging in fellatio such that it would give Lid.K. the knowledge to accurately imagine and describe the specifics associated with the act of engaging in fellatio.

[25] With regard to Lil.K., the proffered evidence indicated that at some unspecified point, K.K. apparently attempted to engage Lil.K. in inappropriate sexual conduct, but the proffered evidence does not clarify whether such alleged conduct occurred before or after Rodarmel's actions. Also, the proffered evidence was unclear as to whether Lil.K. ever actually engaged in any inappropriate acts with K.K. and if so, whether these acts were sufficiently similar to Rodarmel's actions with Lil.K..

[26] After reviewing the proffered evidence, we conclude that Rodarmel failed to prove that the sexual innocence inference theory should be applied to this case.

We further conclude that the record demonstrates that Rodarmel was not denied the opportunity to conduct a full, adequate, and effective cross-examination of either Lid.K. or Lil.K.. The trial court, therefore, did not abuse its discretion in excluding the proffered evidence.

## II. Appropriateness of Sentence

[27] Rodarmel also contends that his thirty-year sentence is inappropriate. We disagree. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[28] Rodarmel asserts that his sentence is inappropriate because his offenses were "not out of the ordinary." Appellant's Br. p. 18. We cannot agree that repeated sexual abuse against both of Rodarmel's step-daughters and dissemination of pornography to his young step-children is "ordinary."

Rodarmel also asserts that it reflects positively on his character that his criminal history is "non-existent," he has a good job, has prior service in the Army National Guard, and is involved with and supports his children. Appellant's Br. p. 18. While these facts may ordinarily reflect well on one's character, Rodarmel's character is tainted by the fact that he sexually abused his two, young step-daughters. The Indiana Supreme Court has held that a harsher sentence is more appropriate when the defendant has violated a position of trust that arises from a particularly close relationship between the defendant and the victim, such as a parent-child relationship. *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011). Rodarmel's actions and character reveal that he violated such a position of trust by committing sexual misconduct on his two, young step-daughters. Rodarmel has failed to meet his burden of persuading us that his aggregate thirty-year sentence is inappropriate.

# Conclusion

In sum, we conclude that the trial court did not abuse its discretion in either admitting Rodarmel's statement to Detective Wood into evidence or excluding the proffered evidence relating to other alleged sexual conduct involving Lid.K. and Lil.K.. We also conclude that Rodarmel's sentence is not inappropriate. As such, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.