## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2016, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Worthley
Worthley Law
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Stevenson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 26, 2016

Court of Appeals Case No.
64A03-1511-CR-2038

Appeal from the Porter Superior Court

The Honorable Gwenn Rinkenberger, Temporary Judge

Trial Court Cause No.
64D05-1405-FA-3931

**Bradford, Judge.**

## Case Summary

[1] On May 7, 2014, Appellant-Defendant Robert Stevenson was charged with Class A felony child molestation after allegations arose that he had repeatedly forced his girlfriend's granddaughter, M.C., to place his penis in her mouth. M.C. was between the ages of two and four-and-a-half at the time Stevenson committed the sexual abuse. Following a three-day jury trial, Stevenson was found guilty as charged. He was subsequently sentenced to a term of forty years, ten years of which were suspended to probation.

[2] On appeal, Stevenson contends that the evidence is insufficient to sustain his conviction and that the trial court abused its discretion in excluding and admitting certain evidence. He also contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriate. We affirm.

# Facts and Procedural History

[3] Roy Castro and Amanda Boer are the parents of two minor children: M.C. and J.C. (collectively, "the Children"). At the time of Stevenson's criminal trial, M.C. was six years old and J.C. was four years old.

[4] In early 2014, Boer's mother, Carolyn, would frequently babysit the Children. At all relevant times, Stevenson was Carolyn's boyfriend. Stevenson would frequently spend time with the Children while they were at Carolyn's house.

[5] On January 30, 2014, Castro, Castro's mother, M.C., and J.C. were in a vehicle together driving home from the dentist. While in the vehicle together, the topic turned to "puppy chow," a snack made of Chex mix covered with powdered

sugar. Tr. p. 34. J.C. indicated that the powdered sugar looked like the baby powder that Boer put "on his butt and his hooey during normal [diaper] changing practices." Tr. p. 34. The Children used the term "hooey" to refer to a penis. During this conversation, M.C. said that "Grandpa Rob has a hooey and he asks us to suck it all the time." Tr. p. 48. After hearing M.C.'s statement about "Grandpa Rob," Castro dropped the Children off with his sister and notified the police.

[6] Valparaiso Police Sergeant Jerami Simpson took the report from Castro, Boer, and Castro's mother. While taking the report, Sergeant Simpson instructed Castro and Boer not to allow M.C. and J.C. to return to Carolyn's residence. After taking the report, Sergeant Simpson relayed the report to the Department of Child Services ("DCS"). DCS case manager Rachel Gibson was assigned to the case. She soon thereafter arranged for the Children to be interviewed.

[7] On February 12, 2014, the Children were forensically interviewed by Angie Marsh, a certified forensic interviewer. During her interview, M.C. disclosed that Stevenson had made her suck on his "hooey" while she was in the master bedroom of Carolyn's home. M.C. indicated that she had to suck on Stevenson's penis because he told her to, even though she did not want to. She indicated that he made her do so on numerous occasions. M.C. described Stevenson's penis as looking "hairy and brownish" and being "squishy." Tr. p. 103. M.C. identified Stevenson's pubic hair as brown, silver and gray. M.C. indicated that one time Stevenson "peed" on the bed and that the "pee" was white. State's Ex. 6. She also indicated that Stevenson wiggled his penis with

his hand. M.C. further indicated that J.C. was present and watching television in the room when Stevenson forced her to suck on his penis. During his forensic interview with Marsh, J.C. indicated that he saw something happen but did not elaborate on what he saw.

On February 13, 2014, Valparaiso Police Detective Brian Thurman interviewed Stevenson. During this interview, Stevenson stated that he was forty-five years old; that he lived with his girlfriend, Carolyn; and that he considered M.C. and J.C. to be his grandchildren. Stevenson admitted that there would be times when he would be alone with M.C. and J.C. in the master bedroom of the home he shared with Carolyn. Stevenson denied sexually molesting either of the Children.

On May 7, 2014, Appellee-Plaintiff the State of Indiana (the "State") charged Stevenson with Class A felony child molestation. Following a three-day jury trial, Stevenson was found guilty as charged. On October 22, 2015, the trial court sentenced Stevenson to a term of forty years, with ten of those years suspended to probation. This appeal follows.

# Discussion and Decision

## I. Sufficiency of the Evidence

Stevenson contends that the evidence is insufficient to sustain his conviction for Class A felony child molesting.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[11] In order to convict Stevenson of Class A felony child molesting, the State was required to prove that Stevenson was at least twenty-one years of age and performed or submitted to sexual intercourse or deviate sexual conduct with a

child under fourteen years of age. Ind. Code § 35-42-4-3(a).[1] Deviate sexual conduct was defined as an act involving "(1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94.

[12] In raising this contention, Stevenson claims that the evidence should be found insufficient to sustain his conviction because M.C.'s testimony should have been found unreliable under the incredible dubiosity rule. The Indiana Supreme Court has held that the incredible dubiosity rule applies only in situations "'where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)) (emphases in *Moore*). The Indiana Supreme Court has explained that "while incredible dubiosity provides a standard that is 'not impossible' to meet, it is a 'difficult standard to meet, [and] one that requires great ambiguity and inconsistency in the evidence.'" *Id*. at 756 (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)). "'The testimony must be so convoluted and/or contrary to human experience that no reasonable person could believe it.'" *Id*. (quoting *Edwards*, 753 N.E.2d at 622 (internal citation omitted)). Thus, the Indiana

---

[1] Indiana Code section 35-42-4-3 was amended in accordance with Indiana's new criminal code on July 1, 2014. However, because Stevenson's criminal actions occurred prior to July 1, 2014, we will apply the version of Indiana Code section 35-42-4-3 that was in effect at the time Stevenson committed the acts at issue.

Supreme Court has held that a finding of incredible dubiosity "is a rare occasion." *Id.*

[13] In arguing that M.C.'s testimony was incredibly dubious, Stevenson claims that M.C.'s testimony was incredibly dubious because the evidence demonstrates that he was never alone in the home with M.C. without Carolyn present. Regardless of whether Stevenson was ever alone in Carolyn's home with the children, the evidence demonstrates that Stevenson admitted to Detective Brian Thurman that he would watch television with the children on the bed in the master bedroom "all the time." Tr. p. 213. The record further indicates that Carolyn was not always present in the bedroom with Stevenson and the children. Specifically, Mother testified that she had observed the children in the bedroom with Stevenson while Carolyn was "[o]n the computer in the other room." Tr. p. 119. Likewise, Father testified that when he would pick the children up from Carolyn's home, he observed that Stevenson "would be in the bedroom on the bed and the kids would be on the bed with him and they would be watching TV." Tr. p. 55. Father further testified that at these times, Carolyn would "usually be on the computer in the kitchen." Tr. p. 56. Given this testimony, we find Stevenson's claim that the evidence demonstrated that he never was never alone with the children without Carolyn present to be without merit. As such, we cannot say that M.C.'s testimony was incredibly dubious for this reason.

[14] Stevenson also claims that M.C.'s testimony was incredibly dubious because M.C.'s testimony regarding the color of his pubic hair was not accurate.

During her interview with Angie Marsh, a forensic interviewer, M.C. indicated that Stevenson's pubic hair was brown, silver, and gray. M.C.'s testimony was largely consistent at trial where she testified that Stevenson's pubic hair was "brownish." Tr. p. 97, 103. Stevenson claims that the evidence demonstrates that his pubic hair was black. While the evidence relied upon by Stevenson demonstrates that Stevenson's pubic hair is dark in color, the evidence is such, however, that one could reasonably describe Steven's public hair as being "brownish" in color. As such, we cannot say that M.C.'s testimony in this regard was incredibly dubious.

## II. Evidentiary Questions

[15]     Stevenson also contends that the trial court abused its discretion in excluding certain evidence from trial and admitting other evidence at trial.

> The admission or exclusion of evidence is entrusted to the discretion of the trial court. *Farris v. State*, 818 N.E.2d 63, 67 (Ind. Ct. App. 2004). We will reverse a trial court's decision only for an abuse of discretion. *Id*. We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Taylor v. State*, 891 N.E.2d 155, 158 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id*. In determining whether an error in the introduction of evidence affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury. *Oldham v. State*, 779 N.E.2d 1162, 1170 (Ind. Ct. App. 2002). Admission of evidence is harmless and is not grounds for reversal where the evidence is merely cumulative of

other evidence admitted. *Pavey v. State*, 764 N.E.2d 692, 703 (Ind. Ct. App. 2002).

*Collins v. State*, 966 N.E.2d 96, 104 (Ind. Ct. App. 2012). "Moreover, the trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory." *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008) (citing *Gonser v. State*, 843 N.E.2d 947, 950 (Ind. Ct. App. 2006)).

## A. Exclusion of Certain Evidence

[16] Stevenson argues that the trial court abused its discretion in ruling that he could not call J.C. as a witness at trial.

> Every defendant has the fundamental right to present witnesses in his or her own defense. [*Barber v. State*, 911 N.E.2d 641, 646 (Ind. Ct. App. 2009)] (citing *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998) (some internal citations omitted); *see Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."). "This right 'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecutor's to the jury so it may decide where the truth lies.'" *Barber*, 911 N.E.2d at 646 (quoting *Roach*, 695 N.E.2d at 939) (internal quotation omitted)). "'At the same time, while the right to present witnesses is of the utmost importance, it is not absolute.'" *Id*. (quoting *Roach*, 695 N.E.2d at 939 (internal citation omitted)). "'In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *Id*. (quoting *Roach*, 695 N.E.2d at 939 (internal quotation omitted)).

*Tolliver v. State*, 922 N.E.2d 1272, 1282 (Ind. Ct. App. 2010), *trans. denied*.

[17]     Stevenson claims that the trial court abused its discretion in excluding J.C. from testifying at trial because the trial court did not properly examine J.C.'s competency to testify. In support, Stevenson argues that the trial court was required to inquire into whether J.C. (1) understood the difference between telling a lie and telling the truth, (2) knew he was under compulsion to tell the truth, and (3) knew what a true statement actually was. Appellant's Br. p. 17 (citing *Newsome v. State*, 686 N.E.2d 868, 872 (Ind. Ct. App. 1997)). For its part, the State argues that even if the trial court failed to properly delve into J.C.'s competency, as Stevenson alleges, Stevenson has waived appellate review of the trial court's decision regarding J.C. by failing to make an offer of proof indicating what relevant evidence would likely be elicited from J.C.'s testimony.

[18]     The following exchange occurred during trial with respect to whether J.C. should be allowed to testify:

> [State]:          Just on the issue of J.C.
>
> [Trial Court]:    All right. Well, let's hear it.
>
> [State]:          Judge, obviously, we are here with the Defendant being charged with one Count against M.C. To place J.C. on the stand when I have not met him, Defense Counsel has not met him, he has absolutely no understanding of what happens in this courtroom, I do not believe that [Defense Counsel] can provide him as a competent witness. Obviously, every witness under 601 is presumed competent; however,

obviously in the case of children there has to be a dialogue that is gone through, similar to what I went through with [M.C.] and I don't think that can be provided with J.C. I have not met with him, and [Defense Counsel] has not met with him. He scheduled a deposition of him and cancelled that [deposition]. And there's been no indication he has any idea what's going on here or what the purpose of this courtroom would be.

And frankly, he's not relevant. I mean, he is indicated to have been in the room, but even in the forensic interview with Ms. Marsh he gave her nothing because he's bouncing all over the room.

[Trial Court]:        [Defense Counsel].

[Defense Counsel]: Whether the witness is competent is your Honor's decision. Especially if the State hasn't met him I don't see how they could possibly render any sort of opinion on that issue. Second of all, Rachel Gibson testified that [J.C.] was a witness. [M.C.] testified that [J.C.] was always around. And he was forensically interviewed so there's at least an indication that at one point the State believe [sic] that he had relevant information. Now, if the only kind of information that's relevant is the kind that suggests that Mr. Stevenson is guilty, then perhaps [J.C.] doesn't provide any relevant evidence. But I would say that the contrary does not negate his relevance.

[Trial Court]:        Where do you recall hearing testimony that he was, I think the testimony is undisputed he was in the home. Where do you believe you heard testimony that he witnessed anything?

[Defense Counsel]: Rachel Gibson testified that [J.C.] is a witness. M.C. testified that [J.C.] was with her when these things were happening.

[Trial Court]:        State.

[State]:          [M.C.] specifically admitted that [J.C.] was in the room on the floor watching TV. To take that that he is a witness I think takes a leap that is not there.

[Trial Court]:     Based upon her own testimony?

[State]:          Correct.

[Trial Court]:     … And I'm going to grant the State's request to prohibit [J.C.] from testifying due to his age, and I do not find that what he may or may not know is relevant.

Tr. pp. 193-195. This exchange demonstrates that while Stevenson generally indicated that he believed that J.C.'s testimony might potentially provide relevant evidence, Stevenson failed to make an offer of proof with regard to what relevant evidence he believed J.C. would be able to provide during trial. As such, his challenge to the trial court's decision to exclude J.C. from testifying is waived. *See State v. Wilson*, 836 N.E.2d 407, 410 (Ind. 2005) (providing that "[a]n offer of proof should show the facts sought to be proved, the relevance of that evidence, and the answer to any objection to exclusion of the evidence.").[2]

---

[2] It is also of note that at Stevenson's request, the video recording of J.C.'s forensic interview with Marsh was played for the jury. In viewing this video, the jury was able to observe J.C.'s young age and his ability to answer Marsh's questions with answers containing any substance. While J.C. indicated that he saw "something happen," he would not elaborate as to what he saw and did not disclose observing or being the victim of any sexual abuse during this interview. Tr. p. 76.

# B. Admission of Certain Evidence

[19] Stevenson also argues that the trial court abused its discretion in admitting evidence relating to his drug and alcohol use. For its part, the State maintains that the evidence relating to Stevenson's drug and alcohol use was relevant to the question of whether Stevenson may not remember committing the alleged criminal acts because he was intoxicated when the acts occurred.

[20]     Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Ind. Evidence Rule 401. "Generally speaking, relevant evidence is admissible, and irrelevant evidence is inadmissible." *Sandifur v. State*, 815 N.E.2d 1042, 1048 (Ind. Ct. App. 2004), *trans. denied*; Ind. Evidence Rule 402. Relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. These basic tenets of evidence are utilized in addressing the specific issue of when evidence of other bad acts is admissible.

Indiana Evidence Rule 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

In determining the admissibility of evidence under Rule 404(b), the trial court must: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2)

balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Ware v. State,* 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004). We employ the same test to determine whether the trial court abused its discretion. *Id.*

The effect of Rule 404(b) is that evidence is excluded only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Sanders v. State,* 724 N.E.2d 1127, 1130-1131 (Ind. Ct. App. 2000). The paradigm of inadmissible evidence under Rule 404(b) is a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes. *Swanson v. State,* 666 N.E.2d 397, 398 (Ind. 1996). Because evidence of other bad or uncharged acts can often be unduly prejudicial, however, exceptions to the 404(B) rule of permitting such evidence demonstrating motive, intent, preparation, plan, etc., are to be applied cautiously. *Brown v. State,* 577 N.E.2d 221, 226 (Ind. 1991).

*Southern v. State*, 878 N.E.2d 315, 321-22 (Ind. Ct. App. 2007).

[21]   In the instant matter, we need not determine whether the challenged evidence should have been excluded under Rule 404(b) because even assuming that it was error to include the statements relating to Stevenson's drug and alcohol use, we find such error to be harmless. "Error is harmless if the conviction is supported by substantial independent evidence of guilt such that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Tolliver*, 922 N.E.2d at 1279 (citing *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000)). During trial, M.C. testified unequivocally and consistently that Stevenson forced her to suck on his penis on numerous occasions. M.C.

gave consistent descriptions of Stevenson's penis. M.C.'s testimony was consistent with the statements she made during her forensic interview with Marsh and with statements she made to father and paternal grandmother. Given M.C.'s testimony, we conclude that Stevenson's conviction was supported by substantial independent evidence of his guilt and that there was no substantial likelihood that the evidence of his occasional drug and alcohol use contributed to his conviction. As such, we further conclude that any error that the trial court may have committed can only be considered harmless.

# III. Sentence Challenge

Stevenson also challenges his sentence. In doing so, he contends both that the trial court abused its discretion in sentencing him and that his sentence is inappropriate in light of the nature of his offense and his character.

## A. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include

entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490-91. A single aggravating factor may support an enhanced sentence. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993).

[24] In sentencing Stevenson, the trial court found the age of the victim and the fact that Stevenson was in a position of trust over the victim to be aggravating factors. Stevenson does not argue on appeal that the aggravating factors found by the trial court are not supported by the record. Rather, he claims that the trial court abused its discretion by failing to find his relatively minor criminal history, including the fact that none of his prior convictions were for sex crimes, to be a mitigating factor.

[25] Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). A trial court is neither required to find the presence of mitigating factors, *Fugate*, 608 N.E.2d at 1374 (citing *Graham v. State*, 535 N.E.2d 1152, 1155 (Ind. 1989)), nor obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v.*

*State*, 749 N.E.2d 36, 38 (Ind. 2001) (citing *Birdsong v. State*, 685 N.E.2d 42, 47 (Ind. 1997)). "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Henderson*, 769 N.E.2d at 179 (internal quotations omitted). Furthermore, while Indiana law mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, *id.*, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

[26] Stevenson argues that the trial court should have found his relatively minimal criminal history, including the fact that he had never previously been accused or convicted of a sex crime, to be a mitigating factor. Although a lack of criminal history may be considered to be a mitigating factor, trial courts are not required to give significant weight to a defendant's lack of criminal history. *Townsend v. State*, 860 N.E.2d 1268, 1272 (Ind. Ct. App. 2007), *trans. denied*. This is especially so "'when a defendant's record, while felony-free, is blemished.'" *Id.* (quoting *Stout v. State*, 834 N.E.2d 707, 712 (Ind. Ct. App. 2005), *trans. denied*). Further, "'[i]n the non-capital context, a single conviction or juvenile adjudication may negate this mitigating circumstance [of lack of criminal history].'" *Id.* (quoting *Warlick v. State*, 722 N.E.2d 809, 813 (Ind. 2000)).

[27] While the record reveals that Stevenson has no prior felony convictions, his criminal history includes seven prior misdemeanor convictions which date back to 1987 and 1989. These convictions include two counts of battery of a police officer, three counts of resisting law enforcement, disorderly conduct, and public intoxication. Stevenson was also arrested for and charged with domestic battery in 2007. This charge was subsequently dismissed after Stevenson completed one year of a pre-trial diversion program.

[28] The trial court acknowledged that Stevenson's criminal history was not extensive but stated that the court did not find it to be a mitigating factor. Thus, the situation presented here is not one in which the trial court was not aware of Stevenson's criminal history. Although Stevenson's criminal history may not constitute an aggravating circumstance sufficient to enhance a sentence, the trial court was not required to attach mitigating weight to his criminal history. *See Robinson v. State*, 775 N.E.2d 316, 321 (Ind.2002) (trial court properly attached no mitigating weight to defendant's criminal history consisting of one misdemeanor, possession of marijuana, and several traffic infractions). We therefore conclude that the trial court did not abuse its discretion in declining to find Stevenson's criminal history to be a mitigating circumstance.

## B. Appropriateness of Sentence

[29] Stevenson also claims that his forty-year sentence, ten years of which was suspended to probation, is inappropriate in light of the nature of his offense and his character. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's

decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[30] With respect to the nature of Stevenson's offense, we find the nature of Stevenson's offenses to be abhorrent as he repeatedly victimized a young child over whom he was in a position of trust. The evidence demonstrates that M.C. was between the ages of two and four and a half when she was victimized by Stevenson. In addition, Stevenson committed these heinous acts while J.C., who was between the ages of one and three, was in the room watching television.

[31] Stevenson's acts of victimizing a young child over whom he had a position of trust also reflects poorly on Stevenson's character. In addition, while Stevenson had not previously been convicted of any prior felony offenses, his criminal history was not unblemished. Again, Stevenson's criminal history includes seven prior misdemeanor convictions which date back to 1987 and 1989. These convictions include two counts of battery of a police officer, three counts of

resisting law enforcement, disorderly conduct, and public intoxication. Stevenson was also arrested for and charged with domestic battery in 2007. This charge was subsequently dismissed after Stevenson completed one year of a pre-trial diversion program. The fact that Stevenson committed the instant criminal acts after having previously been granted the mercy of the court as evidenced by his 2007 participation in a pre-trial diversion program also reflects poorly on his character. In fact, the evidence presented at trial suggests that he has apparently chosen not to refrain from victimizing others and has apparently moved from victimizing innocent women to victimizing innocent young children. Stevenson has failed to establish that his forty-year sentence, ten years of which was suspended to probation, was inappropriate in light of the nature of his offenses and his character.

# Conclusion

[32] In sum, we conclude that the evidence is sufficient to sustain Stevenson's conviction, the trial court did not abuse its discretion in excluding and admitting certain evidence, the trial court did not abuse its discretion in sentencing Stevenson, and Stevenson's sentence is not inappropriate. As such, we affirm the judgment of the trial court.

[33] The judgment of the trial court is affirmed.

Pyle, J., and Altice, J., concur.